193 N.J. Super. 643 (1984)
475 A.2d 648
PATRICIA JEAN DEEMER, INDIVIDUALLY AND AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF JERRY T. DEEMER, DECEASED, PLAINTIFF-RESPONDENT,
v.
SILK CITY TEXTILE MACHINERY CO., A NEW JERSEY CORPORATION, AND ANTHONY INCANNO, INDIVIDUALLY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 1984.
Decided March 16, 1984.
*647 Before Judges MICHELS, KING and DREIER.
V. Vincent Velardo argued the cause for appellants (Velardo & Koprowski, attorneys; V. Vincent Velardo, of counsel; Joseph T. Delgado, on the brief).
David M. Paris argued the cause for respondent (Piro, Zinna and Cifelli, attorneys; Roseann Primerano, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
This is a wrongful death action instituted by plaintiff Patricia Jean Deemer, individually and as administratrix ad prosequendum of the Estate of her deceased husband, Jerry T. Deemer (Deemer). The action was instituted against defendants Silk City Textile Machinery Co. (Silk City) and Anthony Incanno (Incanno), to recover damages based on theories of strict liability, implied warranty and negligence.
It appears from the record submitted on this appeal that on August 14, 1980 Deemer suffered a crush-type injury to his left ankle while performing maintenance work on a shear-cut batcher manufactured by Silk City. Ultimately he died, and this action was instituted claiming that his death was causally related to the accident. The machine involved was sold by Silk City to decedent's employer, Collins & Aikman, at some time prior to November 30, 1977. Initially, the machine was installed at a Collins & Aikman plant located in Cowpens, South Carolina. Approximately three weeks prior to the decedent's accident, the machine was moved to the Collins & Aikman plant in Farmville, North Carolina, at which the accident occurred. Plaintiff claims that this machine was moved with the assistance of Silk City and its agents, servants, and/or employees. Silk City, on the other hand, contends that the actual moving of the machine was effectuated without any such assistance, but that after the machine was relocated Incanno, a Silk City *648 representative, provided instructions to Collins & Aikman personnel.
At the time of the sale of the machine, and at the time of the accident, Silk City was a New Jersey corporation doing business throughout the United States. The machine was manufactured in New Jersey. At the time of the accident, and at the time of his demise, decedent was a resident of North Carolina. The accident occurred in North Carolina, and the decedent filed a workers' compensation petition there as well. His wife, the plaintiff, continues to be a resident of North Carolina. It also appears that on January 1, 1983, Silk City effectuated a bulk sale of its assets to Krantz America, Inc., a German corporation whose principal place of business in the United States is located in North Carolina. At the time of this bulk sale, Silk City underwent a dissolution and terminated its corporate existence.
After filing an answer, defendants moved before the trial court for an order declaring that the law of North Carolina was the applicable law governing this case. The trial court denied the motion, concluding that since the machine was manufactured in New Jersey, there was "a most substantial connection between this case and the law of the State of New Jersey" and therefore the law of New Jersey applied. We granted leave to defendants to appeal from this interlocutory ruling and now reverse.
Historically, New Jersey courts resolved choice of law questions in tort cases in accordance with the doctrine of lex loci delicti, "rigidly applying the [substantive] law of the place where the wrong occurred." Van Dyke v. Bolves, 107 N.J. Super. 338, 342-343 (App.Div. 1969). See, e.g., Marshall v. Geo. M. Brewster & Son, Inc., 37 N.J. 176, 180 (1962); Harber v. Graham, 105 N.J.L. 213, 214-215 (E. & A. 1928). Although this traditional rule advanced certainty, uniformity and predictability in choice of law determinations, Daily v. Somberg, 28 N.J. 372, 380 (1958), it came to be recognized that the "mechanical application" of the lex loci delicti doctrine often produced an *649 unjust result. Mellk v. Sarahson, 49 N.J. 226, 228-229 (1967). Therefore, in a series of cases beginning with Mellk v. Sarahson, supra, and Pfau v. Trent Aluminum Company, 55 N.J. 511 (1970), New Jersey courts abandoned the traditional rule in favor of the governmental interest approach to choice of law questions. This approach requires a two-step analysis in resolving conflicts questions: the court determines first the governmental policies evidenced by the laws of each related jurisdiction and second the factual contacts of the parties with each related jurisdiction. Beckwith v. Bethlehem Steel, 185 N.J. Super. 50, 59-60 (Law Div. 1982); Wuerffel v. Westinghouse Corporation, 148 N.J. Super. 327, 333 (Law Div. 1977). See Rose v. Port of New York Authority, 61 N.J. 129, 139-140 (1972); Pfau v. Trent Aluminum Co., supra; Restatement 2d, Conflicts of Law §§ 6, 145, 146 (1971).
Applying the governmental interest test here, we are convinced that the trial court erred in concluding that the substantive law of New Jersey governed this matter. New Jersey has no interest in protecting the compensation rights of a non-domiciliary resident. Indeed, our Supreme Court's decision in Heavner v. Uniroyal, Inc., 63 N.J. 130 (1973) appears to evidence a policy of discouraging forum shopping where, as here, the contacts with the State are at best tenuous. In Heavner v. Uniroyal, Inc., supra, the purchaser of a truck instituted a product liability action against the manufacturer and retailer of a truck tire for personal injuries to himself and damages to his vehicle, and his wife sought a per quod recovery for loss of consortium, allegedly caused by a defect in the tire which resulted in a blowout and crash. Both plaintiffs were, at the time of the accident and thereafter, residents of North Carolina. Defendant Uniroyal was a New Jersey corporation engaged in the manufacture, sale and distribution of truck tires throughout the United States. Defendant Pullman, from whom plaintiff purchased the truck, was a Delaware corporation doing business throughout the United States. Plaintiff purchased the vehicle from Pullman in North Carolina *650 and the accident occurred in North Carolina. Our Supreme Court was called upon to determine whether New Jersey's four-year statute of limitations or North Carolina's three-year statute was applicable to that action. In the course of resolving this issue, the Court noted that the substantive law of North Carolina was to be applied to the action, stating:
Plaintiffs have shopped not only for a forum where their suit might not be barred by the statute of limitations, but also where the substantive law would seemingly be more favorable than that of North Carolina. The latter is borne out by the complaint's demand for judgment seeking damages "in accordance with the laws of the State of New Jersey." We gather that it is quite doubtful whether North Carolina law, at the time of the accident, recognized strict liability in tort to the extent New Jersey does since Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960), and its progeny, or allowed a cause of action to a wife for loss of consortium. We may add that we do not believe that New Jersey has any sufficient interest in this action to call for the application of its substantive law in preference to that of North Carolina under the governmental interest choice-of-law principles laid down in Mellk v. Sarahson, 49 N.J. 226 (1967), and Pfau v. Trent Aluminum Co., 55 N.J. 511 (1970). Our only possible interest is that Uniroyal, a national company, is incorporated here and that is not enough. Cf. Gore v. United States Steel Corp., 15 N.J. 301, 312 (1954), cert. den. 348 U.S. 861, 99 L.Ed. 678, 75 S.Ct. 84 (1954). All other interests are North Carolina's. Quite apart from choice-of-law considerations, it seems obvious that trial of the case would be much more convenient in North Carolina than in New Jersey. See Gore v. United States Steel Corp., supra; Semanishin v. Metropolitan Life Insurance Co., 46 N.J. 531 (1966). [63 N.J. at 134-135 n. 3].
In Heavner the Court did not examine the governmental policies evidenced by the laws of each jurisdiction, but rather stated merely that New Jersey did not possess "any sufficient interest" in the action and determined that North Carolina law was to be applied since the only contact with this state was that defendant was incorporated here.
Since here the product was both designed and manufactured in New Jersey, we are called upon to apply the full two-step analysis noted earlier. This process was not required in Heavner, where the only New Jersey contact was the chance incorporation of the defendant. Here there are competing policies that bear on this issue: (1) those relating to the defect-free design and manufacture of a product, and (2) those that *651 regulate the full and fair compensation of the injured party. The former would militate in favor of New Jersey law, the latter for North Carolina's. Whatever incidental benefits a liability judgment may contribute towards the correction of a defective design or the deterrence of wrongful conduct with respect to the future distribution of a product, the principal aim of a product liability or other personal injury claim is fairly to compensate the injured party. We therefore determine that that second of the two noted policies must control.
Here, as in Heavner, plaintiff attempted to find a forum "where the substantive law would seemingly be more favorable than that of North Carolina." The North Carolina General Assembly, by the enactment of its 1979 Products Liability Act, G.S. 99B-1 et seq., determined not to adopt strict liability in product liability cases. In view of this legislation, the Supreme Court of North Carolina, in Smith v. Fiber Controls Corp., 300 N.C. 669, 268 S.E.2d 504, 509-510 (1980), declined to adopt the doctrine of strict liability. North Carolina having chosen not to afford its own residents the protection of strict liability, there is no compelling reason for us to extend to such non-domiciliary plaintiffs the benefit of our decisional law. Furthermore, the effect of holding New Jersey law to be applicable in a matter of this kind is to subject any corporation conducting manufacturing activities in this state against whom a product liability claim is asserted to suit in New Jersey under New Jersey law. Such a holding would have the undesirable consequence of deterring the conduct of manufacturing operations in this state and would likely result in an unreasonable increase in litigation and thereby unduly burden our courts.
Moreover, to apply New Jersey law in the factual context here presented would seemingly frustrate the policies of North Carolina's workers' compensation laws. North Carolina apparently does not recognize strict liability in products actions and recognizes the applicability of a contributory negligence defense in products liability actions. See North Carolina G.S. *652 99B-4. Under North Carolina's workers' compensation law, it appears that whenever an employer is found to have negligently contributed to an accident occasioned by the negligence of a third party, any damages awarded to the employee in a suit against the third party are to be reduced by the amount which the employer otherwise would have recovered by way of subrogation, and the employer has no claim against the recovery by the plaintiff. North Carolina G.S. 97-10.2(e). Thus, under North Carolina law, an employer who has contributed to an employee's injuries does not possess a lien for compensation payments made against the amount recovered by such an employee from a third-party in a tort action. To hold New Jersey law applicable here would undercut the North Carolina statutory scheme and undoubtedly disrupt its compensation rate structure. In these circumstances, New Jersey does not possess such a strong policy interest as to compel the application of its law rather than that of North Carolina.
Finally, we are satisfied that New Jersey's contacts with the dispute and with the parties are not sufficient to render New Jersey's interest in this matter paramount. Although the product allegedly causing the injuries was designed and manufactured in New Jersey and the manufacturer Silk City was once incorporated in this state, all the other incidents of the matter involve North Carolina. Both the plaintiff and her decedent were domiciled in North Carolina; the decedent filed a workers' compensation claim in North Carolina; the machine was delivered to South Carolina and was moved to another plant in North Carolina, and the company which bought the assets of Silk City is located in North Carolina. Thus, on balance, the respective contacts of the related jurisdictions dictate the application of North Carolina law.
Accordingly, the order under review is reversed. The matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion. We do not retain jurisdiction.