252 N.J. Super. 347 (1991)
599 A.2d 950
MICHELLE MUELLER, BY HER GUARDIAN AD LITEM, ELLEN MUELLER AND ELLEN MUELLER, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
PARKE DAVIS, A DIVISION OF WARNER-LAMBERT COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 19, 1991.
Decided December 12, 1991.
*349 Before Judges ANTELL, BAIME and THOMAS.[1]
E. Drew Britcher argued the cause for appellants (Stern, Steiger, Croland, Tanenbaum & Schielke, attorneys; E. Drew Britcher of counsel; E. Drew Britcher and Bruce J. Ackerman on the brief).
Anita Hotchkiss argued the cause for respondent (Porzio, Bromberg & Newman, attorneys; Anita Hotchkiss of counsel; Joseph P. Thomas and Jon W. Olson on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This pharmaceutical products liability case presents a difficult choice of law problem. While a resident of Connecticut, Ellen Mueller ingested Dilantin pursuant to a prescription issued by her physician. It is undisputed that she was pregnant at the time she ingested the drug. Michelle, Ellen's daughter, was born in Stamford, Connecticut, on February 17, 1971, with aplastic fibular syndrome, a congenital malformation of the lower leg. This condition resulted in an amputation below the knee when Michelle was nine months old. In 1978, the Muellers *350 moved to Virginia, where they continue to reside. Dilantin is an anticonvulsant prescription drug manufactured by Parke, Davis & Company (Parke Davis). In 1977 Parke Davis moved its principal place of business from Michigan to New Jersey.
On January 10, 1989, plaintiffs instituted this action in the Law Division, alleging that Michelle's condition was caused by her mother's ingestion of Dilantin. Although both the New Jersey and Virginia statutes of limitation are tolled during the period of infancy, see N.J.S.A. 2A:14-21 and Virginia Code Sec. 8.01-229, Connecticut has no statutory counterpart. In Connecticut, a cause of action accrues on the date of the injury or its discovery, but suit must be commenced no more than ten years from the defendant's loss of control or possession of the product. See Conn. Gen. Stat. Ann. § 52-577a. Applying the law of the place where the wrong occurred, sometimes described as lex loci delicti, the Law Division granted defendant's motion for summary judgment and dismissed plaintiffs' complaint with prejudice. We now reverse.
In tort cases, New Jersey has rejected the traditional rule for determining choice of law based on the place where the wrong occurred. See Veazey v. Doremus, 103 N.J. 244, 247, 510 A.2d 1187 (1986); Pfau v. Trent Aluminum Co., 55 N.J. 511, 514-15, 263 A.2d 129 (1970); Mellk v. Sarahson, 49 N.J. 226, 228-29, 229 A.2d 625 (1967). Despite the advantages of uniformity, certainty and predictability often attributed to the lex loci delicti approach, mechanistic application of that rule often led to unjust results. Mellk v. Sarahson, 49 N.J. at 234, 229 A.2d 625. Consequently, we have adopted the more flexible "governmental-interest" analysis in choice-of-law decisions. Veazey v. Doremus, 103 N.J. at 247, 510 A.2d 1187; see also Heavner v. Uniroyal, Inc., 63 N.J. 130, 140-41, 305 A.2d 412 (1973).
Under that analysis, the determinative law is that of the state with the greatest interest in governing the particular issue. See, e.g., State Farm Mut. Auto Ins. Co. v. Estate of *351 Simmons, 84 N.J. 28, 34, 417 A.2d 488 (1980); Pfau v. Trent Aluminum Co., 55 N.J. at 514-15, 263 A.2d 129; Mellk v. Sarahson, 49 N.J. at 229-31, 229 A.2d 625. This approach requires a two-step analysis in resolving conflicts questions. Seckular v. Celotex, 209 N.J. Super. 242, 248, 507 A.2d 290 (App.Div. 1986). The first step is to determine whether a conflict exists between the laws of the interested states. Veazey v. Doremus, 103 N.J. at 248, 510 A.2d 1187. This is to be decided "on an issue-by-issue basis." Ibid.; see also R. Leflar, American Conflicts Law § 92 at 185 (3d ed. 1977); R. Weintraub, Commentary on the Conflict of Laws § 6.9 at 285 (2d ed. 1980). If an actual conflict exists, the governmental policies evidenced by the laws of each jurisdiction must be identified and the factual contacts of the parties determined. Deemer v. Silk City Textile Mach. Co., 193 N.J. Super. 643, 649, 475 A.2d 648 (App.Div. 1984). If a state's contacts are not related to the policies underlying its law, it has no real governmental interest in having its statute apply. Veazey v. Doremus, 103 N.J. at 248, 510 A.2d 1187.
Against this backdrop, we hold that the Law Division erred by mechanistically applying the law of the place where the wrong allegedly occurred. Instead, once having found that a conflict actually existed, the court should have determined the nexus between the parties and the policies embodied in each state's laws. Because the essential facts are not in dispute, we have decided to resolve the question rather than remanding the matter to the Law Division.
Initially, we find that the interests of both Virginia and New Jersey are paramount to those of Connecticut. Clearly, Virginia has an important governmental interest in compensating its domiciliaries. See, e.g., Schum v. Bailey, 578 F.2d 493, 503 (3d Cir.1978); Allen v. Volkswagen of America, Inc., 555 F.2d 361, 363 (3d Cir.1977); Henry v. Richardson-Merrell, Inc., 508 F.2d 28, 33 (3d Cir.1975). If, as we believe, compensation of Virginia residents is the overriding state governmental *352 interest, it makes little sense to focus upon the expiration date of Connecticut's limitations statute. See Pine v. Eli Lilly & Co., 201 N.J. Super. 186, 193, 492 A.2d 1079 (App.Div. 1985). The fact that plaintiffs were residents of Connecticut when the wrong allegedly occurred is purely fortuitous and not bearing on Virginia's interest in compensating all its domiciliaries uniformly and without exception. Moreover, choosing the respective statute based on the timing of the domicile, as defendant urges, is arbitrary and unfair. While the "bright-line" approach advanced by defendant might ease the burden of judicial administration and reduce the danger of forum shopping, it unreasonably deprives a plaintiff of a valued right where his change of domiciles is totally unrelated to his injury and potential cause of action. Id. at 194, 492 A.2d 1079; see also Comment, Post Transaction or Occurrence Events in Conflict of Laws, 69 Colum.L.Rev. 843, 863 (1969). Within this analytical framework, Connecticut has no compelling interest in having its statute of limitations applied to defeat recovery by plaintiffs. Connecticut's rejection of tolling the expiration period during infancy is not the product of insensitivity to the need of those wrongfully injured. Instead, it is based on the countervailing considerations of social tranquility and repose. See Gurliacci v. Mayer, 218 Conn. 531, 547, 590 A.2d 914, 924 (1991); Keleman v. Rimrock Corp., 207 Conn. 599, 610, 542 A.2d 720, 725 (1988); Zapata v. Burns, 207 Conn. 496, 509, 542 A.2d 700, 707 (1988). Giving priority to the policy of Virginia, the state of residence, does no damage to Connecticut's interest in preventing stale claims. Once plaintiffs left Connecticut, that State lost whatever interest it might otherwise have had in the dispute between the parties. See Comment, Post Transaction or Occurrence Events in Conflict of Laws, 69 Colum.L.Rev. at 50.
Although ambiguously phrased, Parke Davis contends that under Virginia's conflict rules, Connecticut's statute of limitations would apply. Connecticut courts follow the rule of lex loci delicti. See K-Mart Corp v. Midcon Realty Group of *353 Conn., 489 F. Supp. 813, 815 (D.Conn. 1980). But see O'Connor v. O'Connor, 201 Conn. 632, 649-50, 519 A.2d 13, 21-22 (1986) (incorporating the guidelines of the Restatement for those cases in which the doctrine of lex loci would produce an arbitrary and irrational result). Connecticut law deems a tort to have been committed in the state where the injury occurred. Patch v. Stanley Works, 448 F.2d 483, 491 (2d Cir.1971). Virginia generally considers its limitations law procedural. Alabama Great Southern R. Co. v. Allied Chemical Corp., 467 F.2d 679, 681 (5th Cir.1972); Willard v. Aetna Casualty and Surety Co., 213 Va. 481, 483, 193 S.E.2d 776, 778 (1973). However, when the right sued upon is created by a foreign statute that contains a "built in" limitations period, as in a wrongful death statute that established the right to sue and the time within which suit must be brought, Virginia courts adhere to the foreign limitations statute. See Sherley v. Lotz, 200 Va. 173, 104 S.E.2d 795 (1958). The rationale of the Virginia courts for this approach is that the "built in" limitations provision affects the right asserted as well as the remedy, while a foreign jurisdiction's general statute of limitations affects only the remedy and is thus procedural and not applicable in a case tried in Virginia. Alabama Great Southern R. Co. v. Allied Chemical Corp., 467 F.2d at 681-82.
In that context, we do not deem the Connecticut statute of limitations as part of a statutory scheme granting both a right and a remedy. See Champagne v. Raybestos-Manhattan, 212 Conn. 509, 525-26, 562 A.2d 1100, 1109-10 (1989). We doubt that the Virginia courts would consider Connecticut's statute of limitations as "built in" to its products liability law. Indeed, Connecticut does not consider its own product liability statute to be "an inseparable part of the substantive product liability law of the state." Kelly v. Goodyear Tire and Rubber Co., 700 F. Supp. 91, 93 n. 5 (D.Conn. 1987). See also Jones Destruction, Inc. v. Upjohn, 161 Conn. 191, 286 A.2d 308 (1971). In any event, as the forum state, we generally follow our own conflict rules. See Lewandowski v. Nat'l Grange *354 Mut. Ins. Co., 149 N.J. Super. 591, 601, 374 A.2d 489 (Law Div. 1977); see also In re Damato, 86 N.J. Super. 107, 116, 206 A.2d 171 (App.Div. 1965). The point to be stressed is that Virginia has a strong policy assuring that injured parties do not become a charge on its society and that they be restored, if possible, to productivity. This compensation policy is intimately associated with the injured person's present domicile.
New Jersey also has an interest deserving of protection. In Pfau v. Trent Aluminum Co., our Supreme Court indicated that a defendant's domicile has an interest "in seeing that its domiciliaries are held to the full measure of damages or the standard of care [for] which the state's law provide[s]." Id. 55 N.J. at 524, 263 A.2d 129. As articulated by the Court, "[a] state should not only be concerned with the protection and self-interest of its citizens." Ibid. It also has an interest in assuring that its domiciliaries perform their duties and obligations. Id. at 524-25, 263 A.2d 129. The state has a governmental interest in the policy of deterrence. Pine v. Eli Lilly & Co., 201 N.J. Super. at 192, 492 A.2d 1079. That policy is based on the thesis that "exacting compensation from a wrongdoer will deter his future misconduct, and is ordinarily associated `with the sovereignty in which past misconduct took place and in which future misconduct may occur.'" Id. at 192, 492 A.2d 1079, quoting Schum v. Bailey, 578 F.2d at 501. The purpose of deterrence is not to rectify a wrong already done, but rather to obviate future harm. Thus, the domicile of the defendant at the time suit is instituted has a greater bearing than its residence at the time the wrong occurred. A contrary holding "may lead to absurd results." Comment, Post Transaction or Occurrence Events in Conflicts of Laws, 69 Colum.L.Rev. at 850.
We have identified two governmental interests that are paramount to Connecticut's policy discouraging stale claims. The first is the interest of Virginia in assuring full and fair compensation of its injured residents. The second is the policy of New Jersey in deterring future misconduct on the part of its domiciliaries. *355 As between the two, the weight of authority clearly favors the former. See, e.g., Schum v. Bailey, 578 F.2d at 503; Allen v. Volkswagen of America, Inc., 555 F.2d at 364; Henry v. Richardson-Merrell, Inc., 508 F.2d at 33; Heavner v. Uniroyal, 63 N.J. at 141, 305 A.2d 412; Rose v. Port of New York Authority, 61 N.J. 129, 140, 293 A.2d 371 (1972); Pine v. Eli Lilly & Co., 201 N.J. Super. at 193, 492 A.2d 1079; Deemer v. Silk City Textile Mach. Co., 193 N.J. Super. at 651-52, 475 A.2d 648. In that respect, we have said that "[w]hatever incidental benefits a liability judgment may contribute toward the correction of a defective design or the deterrence of wrongful conduct ..., the principal aim of a product liability or other personal injury claim is ... to compensate the injured party." Deemer v. Silk City Textile Mach. Co., 193 N.J. Super. at 651, 475 A.2d 648. We have thus held that the law of the plaintiff's domicile should generally control. Ibid.
We need not dwell upon the subject. In both Virginia and New Jersey, the limitations period is tolled during the plaintiff's infancy. Between New Jersey and Virginia, this case presents a false conflict and it is unnecessary for us to decide which state's interest is paramount. Rohm and Haas Co. v. Adco Chemical Co., 689 F.2d 424, 429 (3d Cir.1982); Systems Operations Inc. v. Scientific Games Development Corp., 555 F.2d 1131, 1136 (3d Cir.1977); Pfau v. Trent Aluminum Co., 55 N.J. at 527, 263 A.2d 129. See also R. Leflar, American Conflicts Law § 93 at 188 (3d ed. 1977).
Accordingly, the summary judgment is reversed and the matter is remanded to the Law Division.
NOTES
[1] Judge Thomas did not participate in oral argument. However, the parties consented to his participation in the decision subsequent to argument.