260 N.J. Super. 402 (1992)
616 A.2d 1300
GEORGE C. MOWREY AND JUDITH A. MOWREY, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
DURIRON COMPANY, INC., A NEW JERSEY[1] CORPORATION, W.J. BARNEY COMPANY; JOHN DOE, A FICTITIOUS NAME, ABC COMPANY, INC., A FICTITIOUS NAME, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1992.
Decided November 13, 1992.
*406 Before Judges DREIER, SKILLMAN and VILLANUEVA.
Michael A. Casale argued the cause for appellants (Mr. Casale, on the brief).
*407 James D. Butler argued the cause for respondent Duriron Company, Inc. (Cataldo F. Fazio, on the brief).
Thomas A. Zammatore argued the cause for respondent W.J. Barney Corp. (Michael D. Andolino, III, attorney; Mr. Zammatore, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiffs, George and Judith Mowrey, appeal from a dismissal of their complaint on forum non conveniens grounds. On March 22, 1991, plaintiffs filed their complaint against Duriron Company, Inc., W.J. Barney Corporation (incorrectly named as "Company" in the caption), and fictitious individuals and entities. Plaintiffs sought damages for personal injuries sustained by George Mowrey on March 25, 1989, when, during the course of his employment at Pfizer, Inc. in Groton, Connecticut, steam escaped from a hose he was carrying. Plaintiffs alleged that a valve in the hose was defective and improperly installed. Plaintiffs named as defendants Duriron, the manufacturer of a valve sold to Pfizer in 1975, and W.J. Barney, the installer of the valve.
Duriron filed its answer on July 19, 1991, and on July 26, 1991 filed a motion to dismiss on the grounds of forum non conveniens. The judge initially denied that motion. W.J. Barney later filed its answer and similarly filed a motion to dismiss on the grounds of forum non conveniens. Duriron joined in that motion. After hearing oral argument, the judge granted defendants' motions.[2]
*408 Plaintiff's injury occurred when he began to move a hose manually from one vat to another at the Pfizer plant. As he was doing this, a co-worker turned a connecting valve several feet away. Steam escaped through the open end of the hose and inflicted first, second and third degree burns over forty percent of plaintiff's body.
Plaintiffs George and Judith Mowrey are residents of Westerly, Rhode Island. John Chandler, the Pfizer employee who gave plaintiff George Mowrey job training and who is a potential witness, also lives in Westerly, Rhode Island.
Plaintiff received all of his medical treatment in Connecticut hospitals. All medical witnesses are in Connecticut. Plaintiff filed his worker's compensation claim in Connecticut. Plaintiff's co-worker, Neil Campbell, who turned the Duriron valve and witnessed the accident, lives in Stonnington, Connecticut.
Duriron is a New Jersey corporation but manufactured the valve, model "FAG341," in Dayton, Ohio,[3] where it also maintains its principal place of business. Bernard Green, a Senior Engineer for Duriron, who possesses knowledge of the valve and who is a potential witness, is employed by Duriron in Dayton, Ohio. Duriron also operates a plant in Pine Brook, New Jersey. It maintains no contacts with the state of Connecticut beyond the mere shipping of valves.
W.J. Barney is a New York corporation with its principal place of business in New York City. Barney is authorized to do business in New Jersey and maintains an agent in the state.
*409 Under the doctrine of forum non conveniens a court may decline jurisdiction whenever "the ends of justice" suggest that plaintiff's chosen forum is inappropriate. Civic Southern Factors v. Bonat, 65 N.J. 329, 332-333, 322 A.2d 436 (1974); Gore v. United States Steel Corp., 15 N.J. 301, 305, 104 A.2d 670, cert. denied, 348 U.S. 861, 75 S.Ct. 84, 99 L.Ed. 678 (1954). In evaluating whether the "ends of justice" require rejection of plaintiff's chosen forum, the court may determine whether defendant will suffer a serious inconvenience if the case proceeds in plaintiff's chosen forum. See Wangler v. Harvey, 41 N.J. 277, 286, 196 A.2d 513 (1963). More importantly, the transfer must not result in any significant hardship to plaintiffs. Ibid.
Once it is determined that plaintiffs will not be adversely affected by the transfer of jurisdiction, the defendant must demonstrate that the plaintiff's chosen forum is "demonstrably inappropriate." Kreuzer v. Kreuzer, 230 N.J. Super. 182, 186, 553 A.2d 55 (App.Div.), certif. denied, 117 N.J. 118, 564 A.2d 848 (1989); see Civic Southern Factors, supra, 65 N.J. at 333, 322 A.2d 436. A mere balancing of conveniences is not sufficient to defeat plaintiff's choice and warrant dismissal. D'Agostino v. Johnson & Johnson, Inc., 225 N.J. Super. 250, 262, 542 A.2d 44 (App.Div. 1988), aff'd o.b., 115 N.J. 491, 559 A.2d 420 (1989) ("D'Agostino I").
Courts may consider both public and private interest factors in determining whether plaintiff's forum is demonstrably inappropriate. Private interest factors include the accessibility of proof, availability of compulsory process, availability of witnesses and the necessity of viewing the premises. D'Agostino I, 225 N.J. Super. at 263, 542 A.2d 44 (incorporating the factors proposed in the seminal case of Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-509, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062-1063 (1947)); Westinghouse v. Liberty Mutual Insurance, 233 N.J. Super. 463, 469, 559 A.2d 435 (App.Div. 1989). Public interest factors include administrative difficulties, local *410 interest in the trial and the undesirability of imposing jury duty on local community members when no local issue is at stake. Ibid. These points were reiterated in D'Agostino I, 115 N.J. at 495, 559 A.2d 420, with the admonition that there be a factual nexus between the issues involved and the forum selected by the plaintiff. However, "[t]here is no suggestion that the nexus must be such that the substantive law of the forum state supports the relief sought by the plaintiff." Ibid.
The trial judge may take all of these factors into consideration when deciding whether to deny plaintiff's choice of forum. Because of the equitable nature of this doctrine, the sound discretion of the trial judge is usually dispositive. Civic Southern Factors, 65 N.J. at 333, 322 A.2d 436; Kreuzer, 230 N.J. Super. at 186, 553 A.2d 55. Absent other factors, an appellate court should not substitute its judgment for the trial court's judgment unless the trial judge clearly abused that discretion. Ibid. Here, however, the trial judge had been given incorrect information concerning Duriron's state of incorporation. Since (a) we cannot determine what the trial judge would have done had he known of this new factor, (b) the record that was before the trial judge is now before us, (c) this case has been fully briefed and argued, and (d) there is no issue of credibility involved, we are in a position to determine the issue. We will rely in part on the trial judge's analysis, but will exercise our original jurisdiction in deciding this case. R. 2:10-5.
Determination of the appropriateness of the forum requires weighing the public and private interest factors. Plaintiff asserts that the "trial court failed to perform any in depth analysis of these factors." It is true that the judge did not articulate his full factual analysis, but the facts admit to only one conclusion. Even a cursory application of the available record to these private interest factors indicates that the judge would not have abused his discretion in concluding that Connecticut was a significantly more appropriate forum for the *411 case, even if he knew Duriron is a New Jersey corporation. For example:
Accessibility of Proof: All of the physical evidence and medical records relating to plaintiff's accident are located in Connecticut. Inasmuch as the Pfizer business records, plaintiff's medical records and plaintiff's worker's compensation claim records are all filed and maintained in Connecticut, there would arise some difficulty in assembling them in New Jersey.
Availability of Witnesses: Plaintiffs reside near Connecticut in Westerly, Rhode Island, as does John Chandler, who supplied plaintiff George Mowrey with his job training. Neil Campbell, the man who turned the valve which allowed steam to escape, lives in Connecticut. All medical personnel who treated plaintiff worked in Connecticut hospitals.
Availability of Compulsory Process: As an express condition to the dismissal of plaintiffs' case in New Jersey, defendants agreed to accept service of process in Connecticut and "submit themselves generally to the jurisdiction of the Courts of the State of Connecticut...."
Necessity of Viewing Premises: The valve in question is still at the Pfizer plant in Connecticut. Attorneys in the case have already made at least one 150-mile trip to the plant.
Courts should also consider public interest factors such as administrative difficulties, local interest in the trial and the undesirability of imposing jury duty on local community members where there is no local issue in the case. D'Agostino I, 115 N.J. at 495, 559 A.2d 420. Because the accident occurred in Connecticut between residents of other states and because neither defendant has its principal place of business in New Jersey, this case will likely neither prod nor pique local interest in New Jersey. A New Jersey jury would have to listen to a Rhode Islander detail his work at a Connecticut factory and then apply to these facts the law of Connecticut. There would *412 be a burden of jury duty in a case that has no relation to the forum.
The fact that Duriron is a New Jersey corporation does not require the retention of jurisdiction. As noted in Gore v. United States Steel Corp., supra, "[P]laintiffs' ... contention that they have an absolute right, guaranteed by the privileges and immunity clause of the federal constitution, to maintain their action in a New Jersey court against the defendant corporation of New Jersey is without any semblance of basis and must be rejected." Id., 15 N.J. at 311, 104 A.2d 670. This principle was further explained in D'Agostino I, where the court noted the different weights to be accorded the home forum of a plaintiff or defendant.
There is a strong presumption in favor of retaining jurisdiction where the plaintiff is a resident who has chosen his home forum. Piper Aircraft Co. v. Reyno, 454 U.S. [235] at 256 n. 24, 102 S.Ct. [252] at 266 no. 24, 70 L.Ed.2d [419] at 436, n. 24 [(1981, reh'g den., 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982)]. A nonresident's choice of forum is entitled to substantially less deference. Ibid. However, domestic residence is not decisive. The doctrine of forum non conveniens is non-discriminatory and does not turn on considerations of domestic residence or citizenship.... Gore v. United States Steel Corp., supra, 15 N.J. at 311 [104 A.2d 670].

[225 N.J. Super. at 262, 542 A.2d 44].
In view of the fact that ample evidence from plaintiffs' case supports defendants' claims concerning each enumerated public and private interest factor, we must reject plaintiffs' argument that the trial judge incorrectly balanced these factors, or that we should reach a contrary conclusion.
Another factor in considering the propriety of the dismissal on forum non conveniens grounds is the assurance that no significant hardship will befall plaintiffs' case as a result of dismissal. See Wangler, supra, 41 N.J. at 286, 196 A.2d 513. Plaintiffs assert that the trial court wrongfully dismissed their case because dismissal of their New Jersey action will result in a dismissal of their complaint by a Connecticut court, applying Connecticut procedural law. They claim that they should not *413 be sent to a state that will not adjudicate their claims on their merits. See Mueller v. Parke Davis, 252 N.J. Super. 347, 599 A.2d 950 (App.Div. 1991). This implicates the question of choice-of-law, irrespective of which state would hold the trial.
In tort cases, New Jersey courts apply a "governmental-interest analysis in determining choice-of-law questions...." D'Agostino I, 115 N.J. at 497, 559 A.2d 420; Veazey v. Doremus, 103 N.J. 244, 247-248, 510 A.2d 1187 (1986). Under this analysis, New Jersey courts apply the law of the jurisdiction with the greatest interest in the resolution of the underlying controversy. Ibid.; see the insightful analysis of the New Jersey choice of law methodology in Marc. S. Klein, A Critical Analysis of New Jersey's Domicile-Driven Choice of Law Methodology, 17 Seton Hall L.Rev. 204 (1987).
The governmental interest analysis involves several steps. After first determining whether there is an actual conflict of laws between the two interested states, the court must next discern what government policies underlie the laws of each state. Finally, the court must match the facts of the case to each state's legislative policies. Veazey, 103 N.J. at 248, 510 A.2d 1187; Mueller v. Parke Davis, 252 N.J. Super. at 350-351, 599 A.2d 950; D'Agostino v. Johnson & Johnson, 255 N.J. Super. 307, 316-317, 605 A.2d 252 (App.Div.) certif. granted, 130 N.J. 396, 614 A.2d 618 (1992) ("D'Agostino II"). Ultimately, the analysis relies on the nexus of the case's state contacts to that state's legislative policies. Ibid.
In this case, Connecticut is the site of the accident, the administrator of plaintiff's workers' compensation plan, the provider of plaintiff's medical treatment, the home of many witnesses, the repository of many business records, and the current site of the valve and industrial process that allegedly caused the accident. Connecticut's extensive contacts with the accident necessarily implicate the legislative policies which undergird Connecticut's products liability laws. New Jersey's complete lack of contacts with the accident or treatment of plaintiff's injury, irrespective of New Jersey being Duriron's state of incorporation and a location of a branch of W.J. Barney's business, less compellingly invokes New Jersey legislative *414 policies. Rhode Island, plaintiffs' domiciliary state, also has an interest "that injured parties do not become a charge on its society and that they be restored, if possible, to productivity." Mueller v. Parke Davis, 252 N.J. Super. at 354, 599 A.2d 950.
Connecticut law contains a three-year statute of limitations for products liability actions. Conn. Gen. Stat. § 52-577a(a). Both defendants waived this defense as a condition of dismissal. But the same section of Connecticut law also provides in a statute of repose that "no such action may be brought against any party ... later than ten years from the date that the party last parted with possession or control of the product." Conn. Gen. Stat. § 52-577a(a). Defendants specifically retained the right to assert this defense.[4] While the statute contains exceptions for products having a useful life over ten years, a worker who can receive workers' compensation may not avail himself of this exception. Conn. Gen. Stat. § 52-577a(c); Daily v. New Britain Machine Co., 200 Conn. 562, 512 A.2d 893, 901-904 (1986).
The Connecticut statute was considered in Mueller v. Parke Davis on similar but distinguishable facts. There the respective states were New Jersey (the selected forum and the tortfeasor's domiciliary state), Virginia (the plaintiff's domicile), and Connecticut (the situs of the injury when plaintiff's mother had been a resident and ingested defendant's product). The contact with Connecticut there was fleeting. The happenstance that plaintiff's mother lived in Connecticut when she swallowed defendant's medication had no continuing bearing on the case. The Mueller court found itself faced with a choice between New Jersey or Virginia law. The court there chose to apply the *415 law of Virginia, but there was no great difference between the two. Only the law of Connecticut would have barred that plaintiff's claims.
Plaintiffs here contend that if New Jersey retained jurisdiction over this case the procedural nature of Connecticut's statute of repose would render it inapplicable as New Jersey's procedural rules would apply. See O'Keeffe v. Snyder, 83 N.J. 478, 490, 416 A.2d 862 (1980) (generally, statute of limitations of the forum state governs). Our Supreme Court has made it clear, however, that
[W]hen the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied, and its limitation period has expired at the time suit is commenced here, New Jersey will hold the suit barred. In essence, we will "borrow" the limitations law of the foreign state.[5]
[Heavner v. Uniroyal, Inc., 63 N.J. 130, 141, 305 A.2d 412 (1973); see also O'Keeffe, supra, 83 N.J. at 490, 416 A.2d 862.]
This analysis has been recognized in the federal courts. Our abandonment of the traditional Restatement rules in favor of the significant relationship test was carefully analyzed and applied in Warner v. Auberge Grey Rocks Inn, 827 F.2d 938, 940-943 (3rd Cir.1987).[6]
*416 The facts of the present case satisfy the Heavner criteria. The cause of action arose in Connecticut and the parties are amenable to Connecticut jurisdiction. Plaintiffs are not New Jersey domiciliaries, and New Jersey has no other substantial interest in the case beyond the fact that it is Duriron's state of incorporation. If the case remained here, under Heavner we would apply both the Connecticut limitation period and the ten-year statute of repose, which apparently has expired as to one or both of the defendants. Unlike in the Mueller situation, Connecticut, the state where the tort occurred and the valve has been maintained, has a distinct interest in applying its law. Whether the Connecticut statute of repose is to be applied to the facts is better left to a Connecticut court, when so many factors justify a Connecticut trial. Such interest overrides any thought that the law of Rhode Island should apply. In fact, plaintiffs expressly disclaimed any application of Rhode Island law.[7] Dismissal here under the terms imposed by the trial judge inflicts no undue hardship on plaintiffs' case.
In sum, our scrutiny of plaintiffs' case reveals that dismissal will not inflict undue hardship on plaintiff because Connecticut's substantive and procedural law will apply in any event. Also, both private and public interest factors weigh heavily in favor of continuation of the case in Connecticut and we independently find that they provide a sufficient basis for the trial *417 court's conclusion that plaintiff's chosen forum is "demonstrably inappropriate."
Affirmed.
NOTES
[1] This matter was presented to the trial judge, and to us at oral argument, under the representation by Duriron's attorney that it is an Ohio Corporation. We noted the New Jersey reference in the case caption and caused the Secretary of State's records to be checked. Evid.R. 9(2)(e). We here have proceeded on the assumption that Duriron is a New Jersey Corporation.
[2] The dismissal was subject to the conditions (a) that plaintiffs could refile their complaint in Connecticut within 60 days of the dismissal, and (b) if the complaint were refiled in Connecticut, defendants would accept process and submit to the court's jurisdiction. Defendants also waived, "any and all defenses which they might otherwise have under any applicable Connecticut statute of limitation; with the express exception that any and all rights and defenses which defendants ... may have under the 10 year Connecticut statute of repose are hereby preserved."
[3] There originally had been speculation that the valve had been manufactured in New Jersey. This was shown to be incorrect by a certification from Duriron that now stands unrefuted.
[4] This statute of repose will not work a substantive modification of the products liability cause of action by limiting the right as well as the remedy. Mueller v. Parke Davis, 252 N.J. Super. at 353, 599 A.2d 950, citing Champagne v. Raybestos-Manhattan, 212 Conn. 509, 525-526, 562 A.2d 1100, 1109-1110 (1989).
[5] While Heavner analyzes a traditional statute of limitation, the issue before us involves a statute of repose. Nevertheless we see no reason to depart from the Heavner analysis. Statutes of repose have both procedural and substantive aspects, and, thus are even more apt to be "borrowed" by a forum state as part of the controlling state's law.
[6] In Seals v. Langston Co., 206 N.J. Super. 408, 502 A.2d 1185 (App.Div.), certif. denied, 104 N.J. 386, 517 A.2d 392 (1986), we cautioned that the application of more expansive New Jersey rules works an injustice on local companies in cases where a corporation's New Jersey residence is the basis of jurisdiction by a nonresident plaintiff.

We see no significant New Jersey interest in exposing New Jersey manufacturers to greater jeopardy in our courts than they would face where a cause of action against them arose, or in a disinterested forum provided by another state. Such a course would encourage forum shopping to avoid the statute of limitations of the state where the cause of action arose. It would also encourage overuse of our judicial system, and would require us to treat local manufacturers more rigorously than foreign manufacturers sued in our courts by foreign plaintiffs.
[Id., 206 N.J. Super. at 412, 502 A.2d 1185].
[7] Application of Rhode Island law would, in all probability, also result in the ultimate application of Connecticut law. Rhode Island, like New Jersey, determines choice of law by weighing the interests of the states involved. Blais v. Aetna Casualty & Surety Co., 526 A.2d 854, 856 (R.I. 1987) (applying the law of Massachusetts where Massachusetts was the situs of the accident and place of relationship of the litigants, even though plaintiff was a Rhode Island resident.