648 A.2d 517

SAMUEL GANTES, ADMINISTRATOR AD PROSEQUENDUM OF GRACIELA GONZALEZ, ON BEHALF OF THE ESTATE OF GRACIELA GONZALEZ AND ON BEHALF OF THE HEIRS-AT-LAW OF GRACIELA GONZALEZ, PLAINTIFF–APPELLANT, v. KASON CORPORATION, OTTO CUYLER ASSOCIATES, AND XYZ CO., I–V (BEING FICTITIOUS BUSINESS ENTITIES WHOSE IDENTITIES ARE CURRENTLY UNKNOWN), DE-FENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 27, 1994—Decided October 25, 1994.

Before Judges PRESSLER, LANDAU and CONLEY.

*Alan Y. Medvin* argued the cause for appellant (Medvin & Elberg, attorneys; *Mr. Medvin,* on the brief).

*Peter R. VanDeventer, Jr.* argued the cause for respondent Kason Corporation (*Robinson, St. John & Wayne,* attorneys; *Mr. VanDeventer,* of counsel, and *John S. Wisniewski* and *Douglas H. Amster,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Summary judgment was afforded to defendant Kason Corporation, a New Jersey corporation (Kason) in this products liability action initiated in New Jersey by Samuel Gantes, as administrator *ad prosequendum* for the estate and heirs of Graciela Gonzalez, who was struck and killed in February 1991, by a machine part while operating a shaker machine in a Gainesville, Georgia chicken processing plant. Graciela Gonzalez was, and her estate and heirs are, resident in Georgia.

Although the state of manufacture was factually disputed, it was assumed for the purpose of the motion that the "Kason Vibroscreen" shaker machine, alleged to have been defective, was manufactured by Kason in New Jersey. The machine concededly had been placed into commerce in 1977, more than ten years prior to both the accident and commencement of this action. It had passed through the hands of several owners in other states, including that of a settling defendant, before its sale to Dutch

Quality House, the Georgia processing company that employed decedent.

The sole issue raised by plaintiff on appeal is whether the motion judge correctly construed New Jersey's "governmental interests" conflict of laws test in ruling that Georgia's ten-year statute of repose should be deemed applicable to this action.[1] It is undisputed that Georgia employs the *lex loci* test and that under governing Georgia case authority, the plaintiff has no cause of action by reason of the repose statute.

Upon careful consideration of the oral and briefed arguments, we affirm, substantially for the reasons set forth in the letter opinion of Judge Beglin dated November 16, 1993,* which concluded that this State's interests were not sufficiently compelling to outweigh the greater governmental interests of Georgia, and so applied the Georgia repose statute.

Although our dissenting colleague argues that her views are "not necessarily" inconsistent with *Deemer v. Silk City Textile Mach. Co.*, 193 *N.J.Super.* 643, 475 *A.*2d 648 (App.Div.1984), we there held that, "Whatever incidental benefits a liability judgment may contribute towards the correction of a defective design or the deterrence of wrongful conduct with respect to the future distribution of a product, the principal aim of a product liability or other personal injury claim is fairly to compensate the injured party." *Id.* at 651, 475 *A.*2d 648. We agree with the dissent's statement that *Heavner v. Uniroyal, Inc.*, 63 *N.J.* 130, 305 *A.*2d 412 (1973) did not create a purely mechanical rule that the limitations law of the state whose substantive law applies is always the automatic choice. We part company, however, with our colleague's insistence that affording an out-of-state forum shopper the opportunity to sue a local manufacturer rises to such a paramount governmental interest of this state, that we must ignore the fact that the

---

[1] Kason, which did not cross-appeal, has sought to argue anew in its responding brief the issue of *forum non conveniens* it raised below. The motion judge did not reach the question, and in light of our affirmance, it is moot.

* Editor's Note: Judge Beglin's formal opinion will be published in a subsequent volume.

state whose substantive law is conceded to be applicable has elected to adopt the statute of repose.[2] Plaintiffs have no cause of action in Georgia; it is not merely that their Georgia-based right is barred by a statute of limitations, as suggested by the dissent.

Without doubt, New Jersey has an interest in deterring manufacture of unsafe products in this state. *See, e.g., Pine v. Eli Lilly & Co.*, 201 *N.J.Super.* 186, 192, 492 *A.*2d 1079 (App.Div.1985). We have recognized, however, that an adverse liability judgment makes but an "incidental" contribution to such deterrence. *Deemer, supra*, 193 *N.J.Super.* at 651, 475 *A.*2d 648.

In contrast, fair compensation of a tortiously injured party is the predominant concern of a personal injury claim for the state of domicile of the injured party, particularly where it is the locus of an industrial accident. *See Deemer, supra*, at 651–52, 475 *A.*2d 648; *Mueller v. Parke Davis*, 252 *N.J.Super.* 347, 355, 599 *A.*2d 950 (App.Div.1991).

The dissent would have us ignore the important interests suggested in *Heavner*, and clearly enunciated in *Deemer*; in *Mowrey v. Duriron*, 260 *N.J.Super.* 402, 408, 616 *A.*2d 1300 (App.Div.1992); and in *Seals v. Langston Co.*, 206 *N.J.Super.* 408, 502 *A.*2d 1185 (App.Div.), *certif. denied*, 104 *N.J.* 386, 517 *A.*2d 392 (1986). These are to prevent "exposing New Jersey manufacturers to greater jeopardy in our courts than they would face where a cause of action against them arose, or in a disinterested forum provided by another state", and to avoid forum shopping, overuse of our

---

[2] New Jersey holds that a statute of repose prevents what might otherwise be a cause of action from arising, whereas a statute of limitations concerns when a cause of action arises or, once arisen, when it is barred. *E.A. Williams, Inc. v. Russo Development Corp.*, 82 *N.J.* 160, 167, 411 *A.*2d 697 (1980). *See also Van Slyke v. Worthington*, 265 *N.J.Super.* 603, 607–608, 628 *A.*2d 386 (L.Div.1993). In *Van Slyke*, the court considered a statute of repose to be part of the adopting state's substantive law for choice of law analysis. *Id.* at 610, 628 *A.*2d 386. In *Mowrey v. Duriron*, 260 *N.J.Super.* 402, 616 *A.*2d 1300 (App.Div.1992), we noted that statutes of repose are more apt than statutes of limitation to be "borrowed" by a forum state as part of the controlling state's law. *Id.* at 415, *n.* 5, 616 *A.*2d 1300.

judicial system, or requiring us to treat local manufacturers sued by foreign plaintiffs more rigorously than foreign manufacturers sued in our courts by foreign plaintiffs. *Seals, supra,* 206 *N.J.Super.* at 412, 502 *A.*2d 1185. As observed in *Mueller v. Parke Davis, supra,* 252 *N.J.Super.* at 355, 599 *A.*2d 950, the weight of authority clearly favors following the law of the state with the interest of compensating its residents, where such law conflicts with that of the state having solely a deterrence interest.

Choice of law in this case requires recognition that deterrence is but one of New Jersey's interests, and that it is outweighed by our policy against forum shopping which exposes local manufacturers to greater burdens than they would face in the state having the most interest in compensation of the injured party.

Affirmed.

PRESSLER, P.J.A.D., dissenting.

I respectfully dissent.

Plaintiff's decedent, a resident of Georgia, died in 1991 as the result of an industrial accident that occurred at her Georgia place of employment. She was struck in the head by a moving part of a separator machine. The machine, known as a Kason Vibroscreen, had been manufactured by defendant Kason Corporation, a New Jersey corporation having its principal place of business in Linden, New Jersey. According to the original certification of Kason's president, the machine had been manufactured in New Jersey. Documentation annexed to the certification indicates that the machine was sold in 1977 to Salvo Corporation of Fall River, Massachusetts, for shipment by Salvo to Snyder's Potato Chips in Berlin, Pennsylvania, then resold by Snyder to Otto Cuyler Associates in 1985, and thereafter resold by Otto Cuyler to Dutch Quality House, decedent's Georgia employer. According to the supplemental certification of Kason's president, Kason had three manufacturing facilities in 1977, one in New Jersey, one in New York State and one in Canada. Although the original sale was completed in New Jersey, all of Kason's correspondence and

internal memoranda respecting the sale came from New Jersey, and the machine was shipped from New Jersey to Pennsylvania, the supplemental certification asserts that the machine's serial number indicates that it had been manufactured at the New York facility. The place of actual manufacture was never determined.

Plaintiff commenced this wrongful death action in New Jersey for the obvious reason that it was barred in Georgia by reason of the Georgia statute that provides that although privity is not required to sustain a products liability action, nevertheless

No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury.

[*Ga.Code Ann.* § 51–1–11].

Defendant moved for summary judgment, contending that Georgia's ten-year statute of repose applied. The trial court, relying essentially on *Heavner v. Uniroyal, Inc.*, 63 *N.J.* 130, 305 *A.*2d 412 (1973), agreed. So does the majority of this court. I do not.

As I understand the reasoning both of the trial judge and the majority, they take the view that in a choice of law problem involving a limitations issue, our courts are obliged by *Heavner* to apply a governmental interest analysis instead of mechanically following the limitations law of the forum and then to choose the limitations law of the jurisdiction having the paramount interest in the cause of action. I agree, of course, that *Heavner* rejected the majority rule, as stated by *Restatement (Second) of Conflicts of Laws* § 142, which mandates routine application of the limitations law of the forum. I do not, however, agree that *Heavner* either requires or intended to require that New Jersey routinely apply the limitations law of the jurisdiction having the paramount interest in the cause of action itself. As is made clear by *Veazey v. Doremus*, 103 *N.J.* 244, 248, 510 *A.*2d 1187 (1986), in a proper government interest analysis, choice of law is not a single, immutable decision governing the entire action and all the issues therein arising. Rather, the decision as to whose law to apply must be made issue by issue on the basis of which state has the greatest interest in the application of its own law to that issue. *See also*

*Grossman v. Club Med Sales, Inc.*, 273 *N.J.Super.* 42, 50–51, 640 *A.*2d 1194 (App.Div.1994).

I recognize that the residence of plaintiff and his decedent in Georgia, the presence there of the allegedly defective machine, and the occurrence of the accident there give Georgia a paramount interest in the application of its laws to any number of issues. I believe, however, that the substantial presence of the manufacturer in New Jersey and the shipment of the machine from New Jersey give this state the paramount interest in applying its laws of repose where not to do so would leave the manufacturer unaccountable at law for the consequences of having put a defective product into the stream of commerce, should that eventually prove to have been the case.

I start with *Heavner* itself. That was a products liability cause brought by North Carolina residents in New Jersey to recover for injuries sustained in an accident occurring in North Carolina that was allegedly caused by a defective tire manufactured by defendant Uniroyal, Inc. The tire was mounted on a wheel of a truck trailer purchased by plaintiffs from defendant Pullman. Uniroyal was incorporated in New Jersey but "engaged in the manufacture, sale and distribution of truck tires throughout the United States." 63 *N.J.* at 134, 305 *A.*2d 412. Pullman, a Delaware corporation "likewise ... [did] business throughout the nation." *Id.* While the Supreme Court's opinion does not expressly indicate whether Uniroyal had manufacturing facilities in New Jersey, it does note that New Jersey's "only possible interest is that Uniroyal, a national company, is incorporated here...." 63 *N.J.* at 135, *n.* 3, 305 *A.*2d 412. There is also no express indication that Pullman did business in New Jersey.

*Heavner*'s rejection of the mechanical law-of-the-forum rule was carefully circumscribed and limited to the facts then before the Court. This is what it said:

We need go no further now than to say that when the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, *New Jersey has no substantial interest in the matter,* the substantive law of the foreign state is to be applied, and its limitation period has expired at the time

suit is commenced here, New Jersey will hold the suit barred. In essence, we will "borrow" the limitations law of the foreign state. *We presently restrict our conclusion to the factual pattern identical with or akin to that in the case before us, for there may well be situations involving significant interests of this state where it would be inequitable or unjust to apply the concept we here espouse.* 63 *N.J.* at 141, 305 *A.*2d 412.

[Emphasis added].

In my view, it is significant that the Court illustrated those situations in which application of the foreign limitations law would be inequitable by referring to *Marshall v. Geo. M. Brewster & Son,* 37 *N.J.* 176, 180 *A.*2d 129 (1962), whose result the Court evidently approved of both as a matter of principle and as consistent with the reasoning that underlay its *Heavner* opinion. The Court summarized *Marshall* as a wrongful death action in which the fatal injury occurred in Pennsylvania and the decedent and his representative were nonresidents of this state, but the defendants, general contractors, had their principal place of business in New Jersey. Apparently of the view that the more generous limitations law of New Jersey was properly applied, *Heavner* concluded that *Marshall* "presented a different factual picture than here present." 63 *N.J.* at 141, *n.* 6, 305 *A.*2d 412.

In comparing the operative facts in *Heavner* with those in *Marshall,* it is plain that the one difference between them was the extent and nature in New Jersey of the defendant Brewster in contrast to the virtual nonpresence, but for the act of incorporation, of Uniroyal. It is therefore also plain that while Uniroyal's presence in New Jersey was deemed by the Court in *Heavner* to be too insubstantial to support an interest by New Jersey in the cause, it is equally plain that it deemed Brewster's presence a sufficient basis for requiring the application of New Jersey limitations law even though a foreign state's substantive law might apply to the wrongful death cause of action. In sum, while the tenuousness of Uniroyal's contacts with New Jersey left no doubt that commencement of Heavner's action in this state was simply a matter of shopping for the most favorable forum, the significant contacts of one who is actually doing substantial business in this state is another matter altogether.

Based on the foregoing, I am persuaded that *Heavner* did not substitute one mechanical rule for another. It did not hold that the limitations law of the state whose substantive law applies is the automatic and mandated choice. To the contrary, it drew a distinction between substantive law and limitations law and, in its treatment of *Marshall*, made clear that each must be subject to a separate government interest analysis and that the same state's law need not apply to both. I am also persuaded by its treatment of *Marshall* that *Heavner* recognized that even though a nonresident's cause of action arose elsewhere, thus mandating application of another state's substantive law, nevertheless the circumstances of defendant's presence in New Jersey *vis-a-vis* the cause of action may be enough to make our interest in our own limitations law paramount. And, finally, I am persuaded that because of the nature of defendant's presence in this case and the consequent contact of the parties with this state, it is New Jersey's limitations law that should apply here.

New Jersey's interest here is not difficult to define. We have a significant and recognized interest in deterring the negligent conduct of those who conduct business in this state and, more specifically, of deterring industry from manufacturing defective products in this state that are then placed into an interstate, perhaps national, perhaps international stream of commerce. *See, e.g., Performance Motorcars of Westchester v. KPMG Peat Marwick*, 274 *N.J.Super.* 56, 643 *A.2d* 39 (App.Div.1994); *Mueller v. Parke Davis*, 252 *N.J.Super.* 347, 599 *A.2d* 950 (App.Div.1991). This state has been at the forefront of products liability law since *Henningsen v. Bloomfield Motors, Inc.*, 32 *N.J.* 358, 161 *A.2d* 69 (1960), and I am firmly convinced that the development of that law and the consequent imposition of strict liability on manufacturers has been a powerful force—perhaps the most powerful force—in effecting, over the last two and a half decades, product safety and social responsibility by industry.

Our interest in deterring the manufacture and sale of defective products in this state is, moreover, directly related to our limita-

tions law, a two-year period modified by the so-called discovery rule of accrual. *See, e.g., Savage v. Old Bridge–Sayreville Medical Group,* 134 *N.J.* 241, 633 *A.2d* 514 (1993); *Apgar v. Lederle Laboratories,* 123 *N.J.* 450, 588 *A.2d* 380 (1991). That is to say, this state has made the policy decision that our courts should be maximally accessible to death and personal-injury victims of defective products. Obviously, we made a different decision in respect of claims arising out of the improvement of real property when we adopted *N.J.S.A.* 2A:14–1.1, which creates a ten-year period of repose for defendants whose negligence arises out of the making of those improvements. And I am also aware that the development of the discovery rule, which effectively extends the normal limitations period, was a substantial impetus for the enactment of that statute. *See, e.g., Rosenberg v. Town of North Bergen,* 61 *N.J.* 190, 293 *A.2d* 662 (1972). My point, of course, is that contrary to the law in Georgia, we have not made that repose decision in respect of defective products.

The question then is whether as both the forum state and the home state of the manufacturer, New Jersey's interest in permitting the action to go forward by applying our limitations law is greater than Georgia's interest in its statute of repose. I believe that it is. As I see it, a state has two basic interests in its limitations period: protection of the integrity of its own court system and protection of the defendant from stale claims. Georgia has no interest in the integrity of the New Jersey court system. And while it obviously has an interest in protecting its residents and its manufacturing community from what it regards as stale claims, that interest is not advanced by foreclosing suit against a New Jersey manufacturer in a New Jersey court. On the New Jersey side of the ledger are our deterrent interest in respect of those who manufacture here, our jurisprudential commitment to the victims of defective products, and the recognition that the place where a product manufactured here ultimately comes to rest and causes injury is a matter of pure fortuity. Consider that limitations law is essentially defensive. Manufacturers of products in this state are surely aware that we apply the

discovery rule. They are also aware that they are likely to be sued in this state. I do not see that a New Jersey manufacturer has any vested interest in the more restrictive limitations law of one of the states in which its products may chance to land. Nor do I see that our policy of creating a favorable environment for the conduct of business is advanced by retaining our discovery rule for causes of action against resident manufacturers that arise in this state but borrowing the more restrictive statute of repose of another state in which our resident manufacturers have caused harm.

I am also aware that while the applicable New Jersey limitations rule is procedural in the traditional sense, Georgia's statute of repose is a procedural-substantive hybrid. *See O'Connor v. Abraham Altus,* 67 *N.J.* 106, 121–122, 335 *A.*2d 545 (1975); *Van Slyke v. Worthington,* 265 *N.J.Super.* 603, 608, 628 *A.*2d 386 (Law Div.1993). I do not think, however, that that makes any difference to my analysis since, obviously, the governmental interest test applies in the first instance to substantive issues. The conflict here is between New Jersey's limitations law and Georgia's statute of repose, whether that statute is procedural, substantive, or hybrid. And the question is whether we have a greater interest under the facts here in the application of our law than Georgia does in the application of its. For the reasons I have stated, I believe our interest is greater.

Our decision in *Deemer v. Silk City Textile Mach. Co.,* 193 *N.J.Super.* 643, 475 *A.*2d 648 (App.Div.1984), is not necessarily contrary to my views here. In *Deemer,* the allegedly defective machine was also manufactured in New Jersey, but by the time the suit was commenced, the defendant manufacturer was no longer in business, having made a bulk sale of all its assets to a German corporation whose principal place of business in the United States was North Carolina, the state in which the injury had actually occurred and in which the plaintiff had been and continued to be a resident. That fact obviously diluted, if not completely eliminated, our interest in permitting the suit to con-

tinue here. Moreover, the workers' compensation scheme of North Carolina, obviously a matter of significant interest to it, was, as we pointed out in *Deemer*, significantly implicated in and would have been compromised by the continuation of the third-party products liability action in New Jersey. *See also Mowrey v. Duriron Co., Inc.*, 260 *N.J.Super.* 402, 616 *A.*2d 1300 (App.Div. 1992). No such similar claim has been made by defendant here. I recognize that this court in *Seals v. Langston*, 206 *N.J.Super.* 408, 502 *A.*2d 1185 (App.Div.1986) reached, on facts closely akin to those here, a conclusion opposite to mine. Needless to say, I am constrained to disagree with its rationale.

In sum, I conclude that Georgia's interest in its own statute of repose is substantially outweighed by New Jersey's legitimate interest in permitting prosecution of this action subject to our limitations law. I therefore vote to reverse.