EDWARD A. DEVLIN AND OCEANSIDE HOSPITAL, INC., PLAINTIFFS-RESPONDENTS, v. NATIONAL BROADCASTING COMPANY, INC., A CORPORATION OF DELAWARE, DEFENDANT-APPELLANT, RAYMOND MASSEY, DOUGLAS FAIRBANKS, JR., AND RICHARD CHAMBERLAIN, DEFENDANTS.

Argued February 23, 1966—Decided May 2, 1966.

*Mr. Richard H. Thiele, Jr.* argued the cause for appellant (*Messrs. Wharton, Stewart & Davis,* attorneys).

*Mr. Harry Green* argued the cause for respondents.

PER CURIAM. On March 31, 1965 Dr. Edward A. Devlin, a resident of Oceanside, California, and Oceanside Hospital, Inc., a California corporation operating a hospital in Oceanside, California, filed a complaint against the National Broadcasting Company in the Superior Court of California. In their complaint the plaintiffs alleged that Dr. Devlin is a physician and surgeon licensed by the State of California, as well as an attorney and counselor at law, licensed by the same State, and that the Oceanside Hospital is a licensed general medical and surgical hospital operating in Oceanside, California. They alleged further that a National Broadcasting Company's nationwide television broadcast on April 9, 1964 had maliciously defamed them and had caused the hospital to

lose business, good will and professional standing and Dr. Devlin to suffer emotionally and physically and to lose respect, prestige and business and professional relationships throughout the United States. Special, general and exemplary damages in the aggregate sum of $5,000,000 were sought in favor of Dr. Devlin and the hospital.

The broadcast described in the complaint was an episode in the National Broadcasting Company's weekly television series known as "Dr. Kildare." It was entitled "An Ungodly Act" and the guest star was Douglas Fairbanks, Jr., portraying a character who was named Dr. Robert Devlin and who was a physician, lawyer and the operator of a small private hospital. Dr. Kildare, portrayed by Richard Chamberlain, brought a poor girl to the hospital for immediate emergency treatment, but she was not accepted and was referred to a county charity hospital. The patient died as a result of the delay. Dr. Kildare described the attitude and policies of Dr. Devlin and his hospital as "downright criminal" and suggested neglect and malpractice. A defamation proceeding against Dr. Kildare was instituted and Dr. Devlin appeared as attorney; during the trial, Dr. Gillespie, portrayed by Raymond Massey, testified that the denial of care to the emergency patient was "an ungodly act," thereby furnishing the title of the episode.

After the plaintiffs instituted their action in California, they filed additional defamation complaints in the States of Washington, Massachusetts and New Jersey. The New Jersey complaint was filed on April 6, 1965 in the Law Division of the Superior Court. It named the National Broadcasting Company and others as defendants and set forth substantially the same matters alleged in the California complaint. The plaintiffs apparently have no connection with New Jersey but they assert that the telecast, insofar as it reached New Jersey viewers, gave rise to separate New Jersey causes of action which should be entertained by the New Jersey courts. According to a stipulation tendered by the National Broadcasting Company, the show ("An Ungodly Act") was produced on film prior to April 9, 1964 and was televised from the film

over stations owned by it or affiliated with it by contract; on April 9, 1964 there were two transmissions from two prints, one emanating from its facilities in New York City at 8:30 P. M., Eastern Standard time, and the other emanating from its facilities in Burbank, California at 8:30 P. M., Pacific Standard time.

On June 2, 1965 the National Broadcasting Company moved to dismiss the New Jersey complaint on the ground that California was the more convenient forum. See *Starr v. Berry*, 25 *N. J.* 573 (1958); *Gore v. United States Steel Corp.*, 15 *N. J.* 301, certiorari denied 348 *U. S.* 861, 75 *S. Ct.* 84, 99 *L. Ed.* 678 (1954); *Vargas v. A. H. Bull Steamship Co.*, 44 *N. J. Super.* 536 (*Law Div.*), affirmed 25 *N. J.* 293 (1957), certiorari denied 355 *U. S.* 958, 78 *S. Ct.* 545, 2 *L. Ed. 2d* 534 (1958). It pointed out that California had adopted the Uniform Single Publication Act (9C *U. L. A.* 171; *Cal. Civ. Code*, §§ 3425.1–3425.5) which provides that no person shall have more than one cause of action for libel founded on any one broadcast over radio or television; that recovery in any action "shall include all damages for any such tort suffered by the plaintiff in all jurisdictions;" and that a judgment in any jurisdiction "shall bar any other action for damages by the same plaintiff against the same defendant founded upon the same publication or exhibition or utterance." See Warner, "Multistate Publication in Radio and Television," 23 *Law & Contemp. Prob.* 14 (1958); Painter, "Republication Problems in the Law of Defamation," 47 *Va. L. Rev.* 1131 (1961). The trial judge denied the motion to dismiss and on September 1, 1965 the Appellate Division granted leave to appeal. We certified before argument in the Appellate Division.

On October 11, 1965 the plaintiffs moved to amend their California complaint to eliminate any claims for damages arising in New Jersey and Massachusetts. The Superior Court of California denied this motion with the notation "Uniform Single Publication Act as adopted in California requires plaintiff to seek all damages wherever sustained in

one action." Thereafter the plaintiffs moved to amend their complaint to limit their damage claims to those allegedly arising from the telecast as received in the Pacific Coast and Mountain time zones. This motion was also denied by the Superior Court of California and on December 15, 1965 the District Court of Appeals of the State of California denied the plaintiffs' petition for a writ of mandate commanding the grant of their motion to amend.

The plaintiffs urge that it would be unjust to dismiss their New Jersey proceeding in favor of the California proceeding and that the trial court's action below was proper. They contend that California's Single Publication Act is inapplicable where, as here, the New Jersey action is based on a telecast from New York which they assert was separate and distinct from the telecast emanating from Burbank, California. They suggest that the California action might ultimately be dismissed under California's retraction statute (*Cal. Civ. Code,* § 48a) and thereby leave them "remediless for the torts committed against them in New Jersey." They point out that the New Jersey Legislature has not adopted the Uniform Single Publication Act, and that, although many states have adopted a single publication rule by judicial decision, the New Jersey courts have not thus far expressly departed from the common law doctrine that each publication may give rise to a separate cause of action at the place of communication. They urge that if the single publication rule which they label "inadequate and unfair" is to be adopted for New Jersey, it should be by legislative act rather than judicial decision.

Many questions affecting multistate communications remain for resolution under the Uniform Single Publication Act, as well as under the judicially declared single publication rule (*Prosser, Torts* 788 (*3d ed.* 1964) ; 1 *Harper and James, Torts* 394 (1956)), and we have no controlling law on the subject. See Warner, *supra;* Painter, *supra; cf.* Note, "The Choice of Law in Multistate Defamation—A Functional Approach," 77 *Harv. L. Rev.* 1463 (1964). It

appears to us that, in view of the obscurities, the plaintiffs' New Jersey action should not now be dismissed but should be stayed until the termination of the California action. That action was first in time, is pending within the state where the predominant contacts and consequences occurred, and will presumably be tried there in regular course. Upon its conclusion, many of the issues raised by the plaintiffs may have been effectively disposed of or may have become moot. Consideration at this time of any of them would be premature and would serve no just purpose. The power to grant a stay is unquestioned (*Marsh v. Marsh's Executors*, 73 *N. J. Eq.* 99, 104–105 (*Ch.* 1907)) and the circumstances equitably call for such action. Accordingly, the New Jersey proceeding will be stayed pending termination of the California action, with leave to the parties to apply thereafter for such relief as they consider appropriate. In the meantime, jurisdiction will be retained.

So ordered.

*For modification*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO.—5.