286 N.J. Super. 24 (1995)
668 A.2d 67
AMERICAN HOME PRODUCTS CORPORATION; AMERICAN HOME FOODS, INC.; AYERST LABORATORIES, INC.; AYERST-WYETH PHARMACEUTICALS, INC.; SHERWOOD MEDICAL COMPANY; AND WYETH LABORATORIES, INC., PLAINTIFFS/RESPONDENTS
v.
ADRIATIC INSURANCE COMPANY (ALSO KNOWN AS RIUNIONE ADRIATICA DI SICURTA); THE AETNA CASUALTY & SURETY COMPANY; AFFILIATED FM INSURANCE COMPANY; AIU INSURANCE COMPANY; ALLIANZ UNDERWRITERS INSURANCE COMPANY; ALL-STATE INSURANCE COMPANY (AS SUCCESSOR TO NORTHBROOK EXCESS AND SURPLUS INSURANCE COMPANY AND NORTHBROOK INSURANCE COMPANY); AMERICAN HOME ASSURANCE COMPANY; AMERICAN REINSURANCE COMPANY; BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA; CALIFORNIA UNION INSURANCE COMPANY; CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA; CITY INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY; THE CONTINENTAL INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; FORUM INSURANCE COMPANY; GENERAL REINSURANCE CORPORATION; GOVERNMENT EMPLOYEES INSURANCE COMPANY; GRANITE STATE INSURANCE COMPANY; HARTFORD ACCIDENT AND INDEMNITY COMPANY; THE HOME INSURANCE COMPANY; INSURANCE COMPANY OF NORTH AMERICA; INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA; INTERNATIONAL INSURANCE COMPANY; INTERNATIONAL SURPLUS LINES INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; LIBERTY MUTUAL INSURANCE COMPANY; LONDON GUARANTEE AND ACCIDENT COMPANY OF NEW YORK; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.; NEW ENGLAND INSURANCE COMPANY; NORTH STAR REINSURANCE CORPORATION; PACIFIC INSURANCE COMPANY; PROTECTIVE NATIONAL INSURANCE COMPANY OF OMAHA; ROYAL INDEMNITY COMPANY; SAFETY MUTUAL CASUALTY CORPORATION; UNIGARD SECURITY INSURANCE COMPANY; UNIONE ITALIANA REINSURANCE COMPANY OF AMERICA; UNITED STATES FIRE INSURANCE COMPANY; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND LONDON MARKET INSURANCE COMPANIES; ALTE LEIPZIGER VERSICHERUNG A.G.; COLONIA INSURANCE COMPANY (ALSO KNOWN AS COLONIA VERSICHERUNG A.G.); GOTHAER VERSICHERUNGSBANK VVAG; AND HAFTPFLICHTVERBANK DER DEUTSCHEN INDUSTRIES V.A.G., DEFENDANTS/APPELLANTS, AMERICAN CENTENNIAL INSURANCE COMPANY; ATLANTA INTERNATIONAL INSURANCE COMPANY (AS SUCCESSOR TO DRAKE INSURANCE COMPANY OF NEW YORK); COMMERCIAL UNION INSURANCE COMPANY (FORMERLY KNOWN AS EMPLOYERS' COMMERCIAL UNION INSURANCE COMPANY OF AMERICA); EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED (DOING BUSINESS AS COMMERCIAL UNION INSURANCE COMPANY); FEDERAL INSURANCE COMPANY FIREMAN'S FUND INSURANCE COMPANY; GIBRALTAR CASUALTY COMPANY; LUMBERMEN MUTUAL CASUALTY COMPANY; NATIONAL CASUALTY COMPANY; NEW ENGLAND REINSURANCE CORPORATION; PRUDENTIAL REINSURANCE COMPANY; PURITAN INSURANCE COMPANY (FORMERLY KNOWN AS MANHATTAN FIRE AND MARINE INSURANCE COMPANY); REPUBLIC INSURANCE COMPANY; TRANSAMERICA INSURANCE COMPANY; THE TRAVELERS INDEMNITY COMPANY; LE ASSICURAZIONI D'ITALIA; ASSURANCES GENERALES DE FRANCE I.A.R.T.; BERMUDA FIRE AND MARINE INSURANCE COMPANY, LTD.; LE CENTRE MUTUEL; CHEMICAL INSURANCE COMPANY; COMPAGNIE NOUVELLE D'ASSURANCES; EISEN UND STAHL; EXCESS INSURANCE COMPANY, LTD.; LA FONCIERE COMPAGNIE D'ASSURANCES ET DE REASSURANCES; GERLING-KONZERN ALLEGEMEINE VERSICHERUNGS-AG; GROUPE D'ASSURANCES MUTUELLES; INSCO, LIMITED; MENTOR INSURANCE LIMITED, UK; NISSHIN FIRE & MARINE; NORTHUMBERLAND GENERAL INSURANCE COMPANY; LA PRESERVATRICE; ROYALE BELGE I.R.S.A. D'ASSURANCE; LE SECOURS; SOCIETE LILLOISE D'ASSURANCE; SWISS REINSURANCE COMPANY; L'UNION DES ASSURANCES DE PARIS I.S.R.D.; ZURICH INTERNATIONAL LTD., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1995.
Decided December 11, 1995.
*28 Before Judges KING, LANDAU and KLEINER.
Gary Hoppe argued the cause for appellants (Manta & Welge, attorneys for Liberty Mutual Ins. Co.; Stephen F. Brock and Michael E. Twomey of the firm Aron, Twomey, Hoppe & Galanty, of counsel).
William B. McGuire argued the cause for appellants (Tompkins, McGuire & Wachenfeld, attorneys for appellants London Market Insurers, Royale Belge Societe Anonym, Excess Ins. Co., *29 and the Britamco Insurers; Mr. McGuire and William H. Trousdale, on the brief).
Daniel J. Thomasch argued the cause for respondents (Pitney, Hardin, Kipp & Szuch, attorneys; Donovan, Leisure, Newton & Irvine, and William J. Ruane, of counsel; Donald W. Kiel, on the brief).
Mound, Cotton & Wollan, attorneys for appellants AIU Insurance Co., American Home Assurance Co., Birmingham Fire Ins. Co. of Pa., Granite State Ins. Co., The Ins. Co. of the State of Pa., Lexington Ins. Co., and National Union Fire Ins. Co. of Pittsburgh (Robert N. Kelly of the firm Jackson & Campbell, and Jeffrey Weinstein, of counsel).
Thurm & Heller, attorneys for appellant Forum Ins. Co. (Steven A. Stadtmauer and Margaret A. Arnold of the firm Vedder, Price, Kaufmann & Kammholz, of counsel).
Bumgardner, Hardin & Ellis, attorneys for appellants Pacific Ins. Co., Continental Ins. Co., London Guarantee and Accident Co. of N.Y. (Janet L. Poletto and Michelle L. Melin of the firm Carr, Goodson & Lee, of counsel).
Siff Rosen, attorneys for appellants Hartford Accident & Indemnity Co., New England Ins. Co., Royal Indemnity Co. and First State Ins. Co. (Susan M. Chesler, of counsel).
Ford, Marrin, Espositio, Witmeyer & Gleser, attorneys for appellant Continental Casualty Co. (Charles Booth and Justin N. Kinney, of counsel).
Rivkin, Radler & Kramer, attorneys for appellant Allstate Ins. Co. (Joni Mason, of counsel).
Connell, Foley & Geiser, attorneys for appellant Aetna Casualty & Surety Co. (Frank A. Lattal, Richard Doran of the firm Gibson, Dunn & Crutcher, and Jodi Newhouse of the firm Gibson, Dunn & Crutcher, of counsel).
Dwyer, Connell & Lisbona, attorneys for appellant Unigard Security Ins. Co. (Kenneth F. Mullaney, Jr., Aidan M. McCormack *30 of the firm Newman & Harrington and James J. Duane, III, of the firm Taylor, Anderson & Travers, of counsel).
Skadden, Arps, Slate, Meagher & Flom, attorneys for appellants General Reinsurance Corp. and North Star Reinsurance Corp. (Mark Hoerrner, of counsel).
Golden, Rothschild, Spagnola & DiFazio, attorneys for appellants The Home Ins. Co. and City Ins. Co. (William E. McGrath and Ann Bickford of the firm Skadden, Arps, Slate, Meagher & Flom, of counsel).
Sheft & Sheft, attorneys for appellants Adriatic Ins. Co., Allianz Underwriters Ins. Co., American Reinsurance Co., Protective National Ins. Co. of Omaha, and Unione Italiana Reinsurance Co. of America (Gerald A. Greenberger, of counsel).
LeBoeuf, Lamb, Greene & MacRae, attorneys for appellants Government Employee Ins. Co. (Lynn Menschenfreund, Elizabeth A. Sandza, and Rocco N. Covino, of counsel).
O'Malvany & Myers, attorneys for appellants Insurance Co. of North America; CIGNA, Central National Ins. Co. of Omaha (Karen Mendalka Hoerrner and Mark D. Plevin of the firm Cromwell & Moring, of counsel).
McElroy, Deutsch & Mulvaney, attorneys for International Ins. Co., International Surplus Lines Ins. Co., and United States Fire Ins. Co. (Kevin M. Haas, of counsel).
Herten, Burstein, Sheridan, Cevasco, Bottinelli & Litt, attorneys for Alte Leipziger Versicherung, A.G., Colonia Ins. Co., Gothaer Versicherungsbank, Haftpflichtverbank der Deutschen Industries V.A.G., Colonia Versicherung A.G. and Eisen & Stahl (Kevin P. Kelly, of counsel).
The opinion of the court was delivered by KING, P.J.A.D.
*31 We granted leave to appeal, R. 2:2-3(b); R. 2:5-6(a), on June 5, 1995 to review the order of the Law Division which declined to dismiss or stay this insurance coverage action on comity grounds, in deference to an earlier action pending in New York's state court. We conclude that the plaintiffs have shown sufficient "special equities" to justify retention of jurisdiction over this New Jersey action. We affirm the March 20, 1995 decision of the Law Division judge declining to dismiss or stay this action.

I.
American Home Products Corporation (AHP), incorporated in Delaware, is a manufacturer and distributor of agricultural, food and healthcare products throughout the United States and abroad. When the insurance contracts involved in this case were negotiated and issued, AHP's corporate headquarters and insurance department were located in New York. AHP had usually litigated coverage disputes with its carriers in New York.
In April 1991, AHP and its subsidiaries filed actions in the Delaware state court against seventy-seven or more insurers, the defendants here, seeking a declaration that these insurers were required to defend and indemnify AHP for liability incurred in connection with environmental claims at thirty-plus cleanup sites in eleven states. AHP also sought money damages for remediation costs already incurred.
Two months later, in June 1991, Employers Insurance of Wausau (Wausau), an excess-liability carrier and a defendant in the Delaware actions, filed a declaratory judgment action in New York state court against AHP, several of its subsidiaries, and the seventy-six other insurers named as defendants in Delaware. The New York action was essentially identical to the Delaware action in legal import, including the same parties, waste sites, and insurance policies.
*32 In July 1991, Wausau and other insurers moved to dismiss AHP's Delaware actions on forum non conveniens grounds. Their motion was granted in November 1991. Upon termination of the case in Delaware, the New York trial-level court dismissed as moot AHP's then-pending motion to dismiss the New York action.
On June 1, 1992 AHP and its subsidiaries filed the present action in New Jersey, seeking declaratory relief against eighty insurance companies. The appellants in the present appeal (the insurers) are forty-three of these defendant insurance companies. This action is substantially similar to the case pending in New York; it involves the same issues and virtually the same parties.[1] AHP concedes that any claims it may have against any of the parties here are pending in or could be joined in the action in New York.
One month after this New Jersey action was filed, AHP moved to dismiss the New York action on forum non conveniens grounds. Wausau and other insurance companies opposed AHP's motion and cross-moved for an order enjoining AHP from proceeding in any jurisdiction other than New York. In December 1992, the New York trial-level judge dismissed the action, except as to the single New York site, on forum non conveniens grounds.
Several insurance companies appealed. On December 15, 1994 New York's Appellate Division reversed the forum non conveniens dismissal of the claims arising from the non-New York sites and reinstated the New York action in its entirety. AHP's attempt to have the New York action dismissed on forum non conveniens grounds was effectively ended when AHP's motion for reargument and its motion for leave to appeal to the Court of Appeals were denied. The New York court, however, refused to enjoin AHP from proceeding in New Jersey, considering that *33 issue "academic" once the New York action was reinstated. Possibly the New York court assumed that this New Jersey action would be stayed by our courts.
AHP had moved its world-wide corporate headquarters, including its insurance and law departments, from New York City to Madison, New Jersey in October 1993. On January 23, 1995, after the New York action had been reinstated in its entirety, a number of the defendant insurers moved to dismiss or stay this New Jersey action, arguing that principles of comity and the entire-controversy doctrine so required. On March 20, 1995 Judge McLaughlin of Hudson County concluded that there were "special equities" which justified the denial of the insurers' motion to dismiss, and he permitted this New Jersey action to proceed. We granted the insurers' motion for leave to appeal on June 5, 1995.

II.
We now have the same complex litigation pending in two law suits in sister states in courthouses five miles apart. The insurers want to litigate in New York, the insured in New Jersey. Insofar as we can determine from this record and the parties' representations, staged discovery has been proceeding in New Jersey at an efficient pace, at least since an April 24, 1994 "Case Management Order I" was entered by Judge McLaughlin. Discovery has been concentrated on eight sites, three in New Jersey and none in New York, all selected by the parties. The discovery undertaken has been deemed efficacious in both jurisdictions.
The fact that an action pending in another state involves the same parties and the same or substantially similar claims does not bar prosecution of a subsequent action here in New Jersey. However, the New Jersey action may, as a matter of sound discretion, be stayed by our courts until the prior action has been adjudicated. Cogen Technologies v. Boyce Eng'g, 241 N.J. Super. 268, 272, 574 A.2d 1018 (App.Div.), certif. denied, 122 N.J. 358, 585 A.2d 368 (1990); Lumbermens Mutual Casualty Co. v. Carriere, 163 N.J. Super. 7, 14, 394 A.2d 132 (App.Div. 1978); Wallace, *34 Muller & Co. v. Leber, 67 N.J.L. 26-27, 50 A. 586 (Sup.Ct. 1901). The issue is one of comity, not lack of jurisdiction.
Our Supreme Court, in Yancoskie v. Delaware River Port Auth., 78 N.J. 321, 395 A.2d 192 (1978), held that when an action, essentially identical to one brought in New Jersey, is pending in another state, "our proper course under comity principles is not to exercise jurisdiction but to adhere to the general rule that the court which first acquires jurisdiction has precedence in the absence of special equities." Id. at 324, 395 A.2d 192.
In 1990 we further explained the reasoning behind the Yancoskie rule:
A court having jurisdiction has the authority to refuse to proceed in a vexatious law suit focusing on a matter already proceeding in the courts of another state. We do not distrust the proceedings of the courts of our sister states as we once did. It has become necessary and commonplace in a national economy for courts to interpret and enforce the laws of other jurisdictions. In these circumstances, there is ordinarily no reason to entertain subsequent local litigation paralleling an already instituted action in another state. And this is so whether the later New Jersey action is brought by plaintiff or defendant in the earlier case....
[Cogen, supra, at 272-273, 574 A.2d 1018 (citation omitted).]
The insurers argue here that the judge made a "clear error of law" when he failed to dismiss or stay the case in preference to the earlier-filed New York action. According to the insurers, the judge applied a "wholly irrelevant forum non conveniens analysis," thus relieving AHP of its "burden of proving ... `special equities'" in order to avoid a stay based on comity.
On a forum non conveniens application, the moving defendant must demonstrate serious inconvenience if the case were to proceed in plaintiff's chosen forum. Wangler v. Harvey, 41 N.J. 277, 286, 196 A.2d 513 (1963). Defendant must also show that transferring or deferring the case to another forum will not result in significant hardship to the plaintiff. Ibid. The judge must do more than merely balance the conveniences in deciding a forum non conveniens motion. D'Agostino v. Johnson & Johnson, Inc., 225 N.J. Super. 250, 262, 542 A.2d 44 (App.Div. 1988), aff'd o.b., 115 N.J. 491, 559 A.2d 420 (1989), appeal after remand, *35 242 N.J. Super. 267, 576 A.2d 893 (App.Div. 1990). The defendant must show that the plaintiff's chosen forum is "demonstrably inappropriate." Mowrey v. Duriron Co., Inc., 260 N.J. Super. 402, 409, 616 A.2d 1300 (App.Div. 1992). Generally, plaintiffs are entitled to choose the forum; the burden is placed on the objecting defendant to demonstrate that the plaintiff's forum is inappropriate. Civic Southern Factors Corp. v. Bonat, 65 N.J. 329, 333, 322 A.2d 436 (1974). "Determination of the appropriateness of the forum [for forum non purposes] requires weighing ... public and private interest factors" including the accessibility of proof, availability of witnesses, administrative difficulties, local interest in the trial, and the availability of a much more appropriate forum. Mowrey, supra, 260 N.J. Super. at 409-10, 616 A.2d 1300.
The insurers correctly contend that a "comity-stay" analysis is qualitatively different from a forum non conveniens analysis. Forum non conveniens and comity are separate concepts and the reasoning animating each, though somewhat overlapping, is distinct. A forum non conveniens analysis examines whether the New Jersey forum is totally inappropriate, regardless of who filed the action or when it was filed. Principles of comity, on the other hand, might require granting a stay even when New Jersey, had it been the first forum selected, would have been entirely appropriate. The general rule favors stays or dismissals in comity-stay situations, in the absence of special equities. The general rule in a forum non conveniens analysis favors retention of jurisdiction, unless the forum is manifestly inappropriate.
No New Jersey case has directly addressed the issue before us. The Supreme Court of Delaware, in McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co., 263 A.2d 281 (Del. 1970), did explicitly distinguish the forum non conveniens analysis from a comity-stay analysis. In McWane, the trial-level court refused to stay or dismiss a second-filed Delaware action on the basis that the movant had not proven "the various elements prerequisite to an invocation of the doctrine of forum non conveniens under our cases." Id. at 282. The Delaware Supreme Court held that, when *36 a prior action had been pending in another state, a forum non conveniens analysis was inappropriate. Id. at 283. The Delaware Supreme Court recognized that granting a stay for comity reasons was discretionary but stated:
such discretion should be exercised freely in favor of the stay when there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues; [and], as a general rule, litigation should be confined to the forum in which it is first commenced, and a defendant should not be permitted to defeat the plaintiff's choice of forum in a pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing; ....
[Ibid.]
The Delaware Supreme Court observed that a forum non conveniens analysis remained appropriate when no prior-filed action was pending in another state. Id. at 284. McWane clearly declared that in Delaware there will be times when a comity analysis will compel the stay of an action even though a forum non conveniens analysis would not compel deference to another forum. The Delaware approach is sensible.

III.
There is no New Jersey precedent which discusses the appropriate burden placed on the respective parties on a motion to stay or dismiss a later-filed New Jersey case under comity principles. The moving insurers argue that, unlike a forum non conveniens analysis, a comity analysis places the burden on plaintiffs to show the existence of "special equities." AHP stresses that, generally, a stay is a remedy which will not be granted unless the moving party demonstrates a "clear entitlement" to relief. See Chalom v. Benesh, 234 N.J. Super. 248, 254, 560 A.2d 746 (Law Div. 1989). Though the parties appear to be in disagreement about their respective burdens, their reasoning may be harmonized with the reasoning in the comity-analysis cases.
One can infer from the Yancoskie and Cogen standard that the burden remains on the moving party to show that the cases and parties are substantially the same in both states and that the plaintiff will not be adversely affected by the stay of the second-filed *37 case. Once this is established the burden logically shifts to the non-moving party to show that "special equities" exist and are sufficiently strong to justify the retention of jurisdiction. We could not sensibly require the moving party to prove an "absence of special equities."
No New Jersey case has specifically articulated how a judge should analyze a motion for a comity stay. We conclude that the following approach is consistent with both existing precedent and common sense: when requesting that the court dismiss or stay a New Jersey case for comity reasons, the defendant should be required to establish (1) that there is a first-filed action in another state,[2] (2) that both cases involve substantially the same parties, the same claims, and the same legal issues, and (3) that plaintiff will have the opportunity for adequate relief in the prior jurisdiction. When a defendant establishes these requisites, it has shown a clear entitlement to comity-stay relief and the judge should grant the stay unless plaintiff demonstrates "special equities."
This analysis actually was applied by the judge in this case. The New York action was filed first. Without dispute, both the New York and New Jersey cases involve virtually the same parties, insurance contracts, waste sites, and legal issues. AHP acknowledges that any distinct claims in the New Jersey action could be brought as counter-claims in New York. The question, according to the judge, came down to whether or not there was any "special equity" justifying a New Jersey court to proceed. The judge determined that New Jersey's links to the case constituted *38 "special equities." The close question for us is whether the judge was within his sound discretion in his interpretation of the meaning and scope of "special equities."
The insurers contend that the factors the judge considered in determining whether special equities existed, because also appropriate to a forum non conveniens analysis, are inappropriate to a comity-stay analysis. AHP in contrast argues that the forum non conveniens factors are completely apposite. The reported cases do not clarify exactly which specific equities are relevant to a comity-stay analysis or indeed how "special" they must be. Some cases lend support to the notion that special equities can be found in the extent of New Jersey's connection to the controversy or parties. Specifically, there are cases which decline to find special equities and point to the absence of New Jersey contacts for justification. See, e.g., Yancoskie, supra, 78 N.J. at 323, 395 A.2d 192 (dismissed second-in-time New Jersey action; noted that Pennsylvania connections to the controversy predominated); Devlin v. National Broadcasting Co., 47 N.J. 126, 128, 219 A.2d 523 (1966) (dismissed defamation action whose only connection with New Jersey arose when a program was telecast into this state). When considering a related but distinct legal issue, we relied heavily on the New Jersey nexus to an environmental action and decided to enjoin the insured from proceeding in a subsequently-filed Texas action. American Employers' Insurance Co. v. Elf Atochem North America, Inc., 280 N.J. Super. 601, 656 A.2d 58 (App.Div. 1995). In McWane, even after the Delaware Supreme Court had expressly distinguished a forum non conveniens analysis from a comity-stay analysis, that court looked to the nexus of the competing jurisdictions with the actions when deciding whether to grant the comity stay. McWane, supra, 263 A.2d at 283.
We also may appropriately consider whether or not granting a comity stay would in any way thwart the public policy of New Jersey. See Philadelphia v. Austin, 86 N.J. 55, 64, 429 A.2d 568 (1981) (a New Jersey court need not enforce a foreign penal claim or judgment for comity reasons if it "would contravene the *39 public or judicial policy of the forum.") Another factor which courts consider is how well-advanced to the trial stage the New Jersey action may be in comparison with the first-filed case. See Moses H. Cone Hosp. v. Mercury Constr., 460 U.S. 1, 22, 103 S.Ct. 927, 940, 74 L.Ed.2d 765, 783-84 (1983). Other factors and interests, not yet specifically articulated by our courts, also could present special equities.
The insurers are correct in reasoning that "special equities" should not simply be interchangeable with the forum non conveniens factors; doing this effectively transforms a comity-stay analysis into a forum non conveniens analysis, equating the two. However, the insurers' contention that forum non conveniens factors are "wholly irrelevant" is not correct. Considerations such as convenience and fairness to the parties, as well as connections with the respective forums, could, in a particular case, give rise to special equities. The difference in a comity analysis is that these factors should be examined, not to determine if litigation in the forum is generally appropriate, but to determine whether a particular case presents specific facts making a stay in New Jersey unjust to the interests of the parties or an unfair and inefficient use of the courts of this State.
In this case, the judge found, with ample justification in this record, that (1) though its headquarters were in New York City when the New Jersey suit was filed in 1992, AHP has had its worldwide headquarters in Madison, New Jersey since 1993, (2) ten of the thirty-seven waste sites allegedly covered by the policies involved are located in New Jersey (only one in New York), (3) six of the defendant insurers have headquarters in New Jersey, (4) about one-third of the estimated $89 million in site-remediation damages may well be attributable to New Jersey sites (only $3 million to New York), (5) New Jersey law will probably be applied to coverage issues involving the ten New Jersey sites, and (6) this New Jersey case was "well along" and discovery had been proceeding expeditiously for the past two years. The judge balanced these New Jersey ties against the two factors favoring deference *40 to New York; (a) the policies were negotiated and sold in New York when AHP headquarters were in that State, and (b) the case was also then proceeding apace in New York.
Moreover, we note the record discloses that AHP has a legitimate presence in this State. It employs about 6,000 people in New Jersey in Hammonton, Mays Landing, Cherry Hill, Princeton, Wayne, Bound Brook and Teterboro and will pay about $6.6 million in State and local taxes this year.
Of the thirty-seven environmental cleanup sites involved in this controversy, these ten are located in New Jersey: (1) the Boyle-Midway Cranford Site; (2) the Harmon Haledon Site; (3) the Renora, Inc. Site; (4) the PJP Landfill Site; (5) the GEMS Landfill Site; (6) the Chemical Control Site; (7) the Price Landfill Site; (8) the Marvin Jonas Transfer Station Site; (9) the Chemsol, Inc. Site; and (10) the SCP-Carlstadt Site. The balance of the sites are in Indiana (9), Pennsylvania (4), California (3), Maryland (3), Ohio (2), and Nebraska, Florida, Connecticut, Puerto Rico, and Illinois (1 each). The New Jersey Department of Environmental Protection (NJDEP) has intervened at eight of these sites by issuing notice letters, directives and requests for information to AHPC and other potentially responsible parties. NJDEP and the United States Environmental Protection Agency have commenced actions in New Jersey courts with respect to at least four of the New Jersey sites. Private actions relating to five of the New Jersey sites have been commenced in the New Jersey District Court and various vicinages of the Superior Court. This State obviously has a significant interest in remediation of its polluted sites. See Morton Int'l, Inc. v. General Accident Ins. Co. of America, 134 N.J. 1, 629 A.2d 831 (1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994); Gilbert Spruance Co. v. PMA, 254 N.J. Super. 43, 47, 603 A.2d 61 (App.Div. 1992), aff'd, 134 N.J. 96, 98, 629 A.2d 885 (1993). We think the judge fairly and within his sound discretion concluded that New Jersey's interests in this case constituted sufficient special equities to justify denying the comity-stay application. Cf. Waste Management *41 Inc. v. Admiral Ins. Co., 138 N.J. 106, 124-25, 649 A.2d 379 (1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995) (discussing burden on the defendant seeking dismissal for lack of in personam jurisdiction to make a "compelling case" that certain equities make the exercise of jurisdiction unreasonable in the circumstance.)
These factors would be relevant to a forum non analysis and would have justified a denial of a motion to dismiss in New Jersey based on that doctrine. However, we find no abuse of discretion in also considering these factors as "special equities" for comity-stay purposes. As suggested earlier, this is a difficult case. This lawsuit has not only enough legitimate quantitative contacts with New Jersey to support AHP's choice of forum over that of the insurers, but those contacts appear to us as qualitatively and economically predominant. Also, the discovery proceedings have been conducted with a cooperative spirit, are nonduplicative, and will be available in either forum.
On November 30, 1995, when this opinion was ready for release, the New York trial-level judge, Justice Shainswit, ruled on pending motions filed in March 1995 and denied both the insurers' motion to enjoin AHP's prosecution of the New Jersey action and AHP's cross-motion to stay the New York action pending the resolution of this appeal. The Justice stated that "where, as here, a sister state has declared that it has `significant and dominant interests' in the adjudication of the controversy in that State, it would be manifestly improper for this court to grant the injunction requested by movants [the insurers]," while recognizing that "nonetheless, the doctrine of comity does not negate New York's interest in this litigation." Unfortunately, there is no available mechanism for consultation with the courts of our sister states concerning application of the comity doctrine and the resolution of jurisdictional conflicts in comity-stay situations. Compare N.J.S.A. 2A:34-34(c) of the Uniform Child Custody Jurisdiction Act providing for communication with the courts of sister states "to the end that the issue may be litigated in the more appropriate *42 forum." See E.E.B. v. D.A., 89 N.J. 595, 612, 446 A.2d 871 (1982), cert. denied, 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 445 (1983); Benda v. Benda, 236 N.J. Super. 365, 370, 565 A.2d 1121 (App.Div. 1989). Nor is there any effective transfer mechanism, as in the federal court system. See 28 U.S.C.A. § 1404(a); Hart & Wechsler's, The Federal Courts and the Federal System, 1733-46 (3d ed. 1988).
We have endeavored in the past to defer to the dominant interests of a sister state on comity grounds based upon the relative importance of the issues to each state. See, e.g., Baldwin Enterprises v. Town of Warwick, N.Y., 226 N.J. Super. 549, 545 A.2d 201 (App.Div. 1988). As both the number and local impact of New Jersey interests are unquestionably strong, perhaps upon review of our decision, the New York court may wish to reconsider its comity-stay ruling and similarly defer to this New Jersey action.
We reject the insurers' alternative theory for dismissal, the bar of the entire-controversy doctrine, see R. 4:30A, as clearly without merit. R. 2:11-3(e)(1)(A) and (E). This case involves concurrent and duplicative, not fragmented, litigation.
Affirmed.
NOTES
[1] Wausau does not appear named as a party in the New Jersey case, although it is listed among the defendants on the appellant's reply brief; AHP comments it is "interesting" that Wausau does not join the present appeal.
[2] AHP argues that the New York action is not "entitled" to first-filed status because AHP was actually the first party to file when it brought suit in Delaware. This misses the point that New Jersey grants comity stays out of deference to the courts of sister states and out of concern for judicial efficiency, not because out-of-state plaintiffs become "entitled" to protection in New Jersey.

The fact that an out-of-state defendant coming to New Jersey might be acting in bad faith, simply trying to defeat the out-of-state plaintiff's choice of forum, might properly be a factor when evaluating equities; in this case, however, both sides appear to have done a fair amount of forum-shopping.