**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1319-24

SYEDA KHADRIA,

    Plaintiff-Appellant,

v.

NIAZUDDIN SHAIK,

    Defendant-Respondent.

_____

Submitted November 18, 2025 – Decided February 2, 2026

Before Judges Rose and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-2183-24.

Cobos Law Firm, attorneys for appellant (Franz Cobos, on the brief).

Siragusa Law Firm, LLC, attorneys for respondent (Vincent J. Stevens Jr., of counsel and on the brief; Lynette Siragusa, on the brief).

PER CURIAM

In this matrimonial dissolution matter, plaintiff Syeda Khadria appeals from a December 2, 2024 Family Part order dismissing her complaint for divorce from defendant Niazuddin Shaik on principles of comity, finding the New Jersey filing precluded by earlier-filed divorce litigation pending in India. Reviewing the record in light of applicable legal principles, we conclude the court dismissed plaintiff's complaint before sufficiently determining whether the Indian litigation involves substantially the same claims and assessing the foreign forum's capacity to adequately and completely resolve both parties' claims. Accordingly, we are constrained to vacate the dismissal of plaintiff's complaint and remand for further proceedings in accordance with this opinion.

I.

The parties were married in Bangalore, India on April 2, 2017. They have no children in common and own no real property; they share only some personal property accumulated during their marriage. It is undisputed defendant, a United States citizen, returned to this country shortly after their wedding, but plaintiff remained in India for two years awaiting immigration approval to join him. Plaintiff obtained authorization[1] and joined defendant in March 2019,

---

[1] The parties dispute the nature of plaintiff's precise immigration status, with defendant contending plaintiff obtained permanent resident status. A permanent

A-1319-24

residing with defendant until she returned alone to India later that year. Defendant then filed for divorce in India in January 2020. Plaintiff returned to the United States later that year and has since remained in New Jersey.

Four years later, on March 22, 2024, plaintiff filed a complaint for divorce from defendant in the Family Part, alleging irreconcilable differences, abandonment, and extreme cruelty. Plaintiff's complaint acknowledged "there was a divorce proceeding in India . . . initiated by defendant," but she represented the case "was filed improperly and [could not] be maintained and [wa]s at a point that is equivalent to a dismissal in the United States." Further, plaintiff certified: "Pursuant to R[ule] 4:5-1(b)(2),[2] except as stated below, the matter in controversy in the within action is not the subject of any other action pending in any court, . . . nor is any such court action . . . presently contemplated."

---

resident card, also known as a "green card," allows holders to "live and work permanently in the United States." Green Card, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/green-card (last visited Jan. 5, 2026). Plaintiff contends she was granted a "CR-1 visa," based solely on her marriage to defendant, who was a United States citizen.

[2] Rule 4:5-1(b)(2) mandates "each party shall include with the first pleading a certification as to whether the matter in controversy is the subject of any other action pending in any court . . . or whether any other action . . . is contemplated . . . . If a party fails to comply with its obligations under this rule, the court may impose an appropriate sanction."

3

Plaintiff's complaint and certification alleged an abusive dynamic, beginning when defendant "delayed" her moving to join him for twenty months after they married. She contended when she finally arrived in New Jersey in March 2019, defendant then pressured her to return to India to take care of his parents, which she did in November 2019. She asserted that upon her next return to this country in November 2020, she was "deserted by defendant," who had already filed for divorce in India. The complaint alleged defendant subjected plaintiff to "extreme cruelty" by first "coerc[ing]" her to care for his parents in India, where she "was treated like a mere domestic worker, cooking and cleaning toilets, without adequate provision to take care of herself." She claimed when she came to New Jersey defendant "subjected [her] to physical and mental cruelty which endangered the safety and health of plaintiff." The complaint demanded dissolution of the marriage, equitable distribution of marital property, rehabilitative alimony, compensatory and punitive damages, and counsel fees.

On August 16, 2024, defendant moved to dismiss plaintiff's divorce complaint based on lack of service and asserting plaintiff was collaterally estopped from bringing this action based on their long-pending divorce action in India. Defendant certified he "filed a necessary divorce complaint in India . . . in 2020," and, thus, "the courts in India have had jurisdiction over

[their] divorce since 2020." He claimed he filed for divorce after plaintiff "abruptly and inexplicably" returned to India, asserting, "after multiple attempts to ascertain plaintiff's reasons for returning to India, it became apparent . . . plaintiff was no longer interested in [their] marriage."

Defendant's certification further stated plaintiff had been "non-responsive" and "adjudged as 'ex parte'" by the Indian divorce court in late 2022, and defendant moved for default judgment in 2023. Plaintiff formally appeared with counsel in April 2023. Because of that pending action, defendant asserted "plaintiff cannot be permitted to force [him] to litigate the same legal issues in two . . . separate jurisdictions," calling it "underhanded legal strategy."

On November 3, 2024, plaintiff filed a cross-motion requesting the court deny "defendant's motion in its entirety" and award plaintiff counsel fees. Plaintiff alleged "the case in India was improperly filed, it was subsequently dismissed and amended by the defendant in June 2023."

In her certification, plaintiff disputed defendant's contention she returned to India in late 2019 without explanation, claiming instead she was "coerced" by defendant to return to India to "serv[e] his parents." She alleged defendant "mistreated" her "verbal[ly] and physical[ly]" when she resided with him prior to her leaving for India. Plaintiff certified she left in November 2019, not

October as defendant alleged. She claimed she "stayed with . . . defendant's parents for a few days until they forced [her] out of the house when [she] asked them to return [her] jewelry and other valuable belongings, which had been taken against [her] will when [she] was living with them earlier." She contended she attempted to return to the United States in April of 2020 but was unable to return until November of 2020 due to the COVID-19 pandemic. She again alleged abuse and averred "the federal government acknowledged defendant's cruelty against [her]" because it approved her application "for an I-751 waiver in New Jersey based on the 'extreme cruelty' clause" upon the expiration of her "conditional green card."[3]

---

[3] Typically, "permanent resident status is conditional if it is based on marriage [of] . . . less than two years on the day [the holder] obtained permanent resident status"; however, permanent residents can "apply to remove the conditions o[f] permanent residence with [their] U.S. citizen or lawful permanent resident spouse" through an I-751 waiver. Removing Conditions on Permanent Residence Based on Marriage, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/green-card/after-we-grant-your-green-card/conditional-permanent-residence/removing-conditions-on-permanent-residence-based-on-marriage (last visited Jan. 21, 2026). I-751 waivers may be granted on several bases including in part: "divorce or annulment" after marriage in good faith; abuse or "extreme cruelty" by a United States citizen or permanent resident spouse; or "extreme hardship" resulting from "the termination of [the holder's] status and removal from the United States."

Plaintiff claimed she was unaware that defendant filed for divorce in India until "much later," and alleged "defendant did not live in India when he filed in January 2020." Plaintiff clarified she "never physically appeared" to participate in the Indian proceedings, but conceded her brother, acting as her power of attorney, appeared on her behalf. She represented "on February 8, 2024, the Indian Court dismissed . . . defendant's pleadings." However, plaintiff further certified "defendant refiled his case after it was dismissed." She claimed a "new case . . . was initiated," but it was filed in "bad faith."

Plaintiff asserted her complaint raised new claims of theft, abuse, and abandonment. Further, "both [parties now] reside in the United States, work in the United States, save in . . . United States bank accounts, and only resided together in the United States." She thus argued "New Jersey is the most appropriate jurisdiction."

In his November 14, 2024 reply certification, defendant disputed plaintiff's allegations, contending plaintiff knew about the Indian proceedings, and deliberately delayed her participation in that litigation until she faced imminent default. He added, "[P]laintiff is an active participant in the ongoing divorce action in India and is represented by an attorney in India as referenced in the submitted Indian Court records."

7

Defendant asserted he has "taken every effort to expedite the divorce in India to be able to move on with [his] life. [He has] diligently worked with [his] Indian attorney to provide him with all facts, documentation, and other relevant information necessary to appear in court regarding the divorce." He alleged "contrary to plaintiff's false assertions, the divorce litigation in India ha[d] never been dismissed." Defendant certified he amended his complaint, which is governed by India's "Special Marriage Act." He claimed, without further citation or support, the Special Marriage Act claims afforded India primary jurisdiction over the dissolution of the parties' marriage.

Defendant maintained the Indian court "unequivocally rejected plaintiff's filed objections to [his] divorce petition in India seeking dismissal on the same on similar grounds," and plaintiff "is an active participant in the ongoing divorce action in India" and represented by counsel. He averred "the very same arguments that plaintiff proffered to the Indian court about the divorce that were dismissed are being present[ed to the court in this action] in an attempt to salvage her divorce action in New Jersey."

On December 2, 2024, the court heard arguments, which commenced with the court's indication it was "inclined to find that jurisdiction is inappropriate here considering that there's already a case fully pending for over three years in

8

India."  Plaintiff's counsel initially claimed the Indian complaint was dismissed in February of 2024; however, the court repeatedly requested any documentation confirming the case had been dismissed.  Ultimately conceding defendant refiled in India, plaintiff's counsel argued the refiling was after plaintiff filed her complaint in New Jersey.[4]

The court then read from plaintiff's exhibits, including purported orders in the Indian divorce action, which permitted defendant to amend the complaint. The court referenced an order dated March 1, 2024, indicating counsel for both parties was present for the proceeding, and noting defendant "filed [an] amended [com]plaint in two sets," and directing the amended complaint "proceed in accordance with [the] law."  Plaintiff's counsel emphasized defendant "never actually provided his [Indian] filings" in support of his motion to dismiss.

Counsel for plaintiff argued New Jersey was the appropriate venue "mainly under the doctrine of com[it]y and equity."  Contending defendant filed in India in bad faith, counsel asserted defendant misrepresented he resided in India when he filed for divorce there.  He claimed the parties had only

---

[4] Plaintiff's counsel claimed defendant conceded he refiled his Indian complaint in June 2024.  The record provided on appeal does not contain any concession by defendant that his amended Indian complaint was filed after the filing of plaintiff's New Jersey complaint.

cohabitated in India briefly during the marriage, but lived together in New Jersey for nine months. Counsel further argued the parties both resided in New Jersey and stated plaintiff made claims of domestic violence and theft in her complaint that should be heard in New Jersey. Alleging defendant's motion amounted to "a forum shopping exercise," plaintiff's counsel argued defendant's "fraud" should not be rewarded by requiring plaintiff to litigate in India.

Defendant's counsel argued plaintiff's complaint was precluded by the pending divorce litigation in India, based on principles of collateral estoppel, not comity. Defense counsel highlighted plaintiff's failure to properly disclose the pending Indian litigation in her complaint. Counsel contended defendant's complaint had "been pending in India for four going on five years, and what [plaintiff] has done has been shirking the process in India" and "engaging in blatant forum shopping because she doesn't like what's going on in India and she would rather that the case be litigated here in the United States." Defendant's counsel asserted "the amendment and the divorce is proceeding forward" in India, and "plaintiff has no counter to that."

The court indicated its analysis should be under principles of comity, rather than collateral estoppel as there was "no law of the case." Defense counsel explained defendant "rais[ed] collateral estoppel because it's about

10

judicial economy."  Counsel indicated the Indian court had made "a few preliminary decisions," and plaintiff faced default when

> plaintiff made an appearance at the very last moment, [and] presented the very same arguments that her attorney here in the United States is presenting [here], that was rejected clearly in the order that [the court] just went through with [plaintiff's counsel], and now she then filed a complaint for divorce here in the United States looking to change the forum.

Thus, defendant contended allowing plaintiff's complaint to proceed would be "an extreme waste of judicial economy" as the same issues were pending in India.

In response to the court's inquiry regarding plaintiff's claim defendant had not amended the complaint until June of 2024, defense counsel responded, "My understanding in speaking with my client was the necessary [amendment] was made immediately after or as immediately as possible after this order was rendered."  The court stated:

> Again, I don't have a docket sheet that really explains India[n] procedure, but it looked to me like the addendum in Exhibit O that counsel for plaintiff provided, looked like it was so amended on March 1[], but that's what I'm trying to decide.  First in time . . . seems to be in India.

11

Counsel then cited to an exhibit reflecting the Indian matter, including amendments and hearings, are "one continuous matter without any breaks or dismissals."[5]

Records from the foreign litigation reflected defendant's original complaint was filed in India in 2020. However, it appears defendant did not provide the trial court with a copy of his amended complaint.

An order dated February 8, 2024, determined the original complaint was "not maintainable" as drafted because it solely alleged grounds for "Muslim Divorce," which apparently could not be asserted by a "husband," but directed the deficiency "[could] be cured by suitable amendment," under a particular section of India's "Special Marriage Act." Another order, dated March 1, 2024, acknowledged defendant's amendment of the Indian complaint.

The court again inquired of plaintiff's counsel regarding the status of the Indian divorce proceeding:

> THE COURT: Counsel, you keep saying it got dismissed. Show me on this piece of paper, Exhibit 3 to the reply, where it shows the history. This matter seems to still --
>
> [PLAINTIFF'S COUNSEL]: I don't know –

[5] The copy of this document included in defendant's appellate appendix is largely illegible.

. . . .

THE COURT: Show me where -- you keep saying dismissed, I don't see it.

[PLAINTIFF'S COUNSEL]: . . . I don't think this really substantially tells you anything. . . . [O]n the merits of the claim it should be a New Jersey case.

THE COURT: Okay. Again, I don't think you're disputing that when he filed in January 2020 that he wasn't in India.

[PLAINTIFF'S COUNSEL]: Yes, we are, I just told you that he didn't live in India, he never lived in India, . . . he lived in New Jersey this whole time. . . . They moved in together for six months he was there visiting . . . a couple months to see his parents, but never resided like in the definition of our court rules.

THE COURT: So then when her brother, who's her [power of attorney] in India, had time to file why didn't he ever make that kind of motion that there's no jurisdiction? And if that were the case and that case was actually thrown out, then I'd be able to handle it here. But you're making arguments to me here that were more appropriately made in India.

What I'm seeing here today is first in time, first in right. There's no need for me to relitigate a case that is pending and scheduled in India. I gave you [an] opportunity to convince me otherwise, but I'm not really finding that you've . . . overcome that hurdle.

Plaintiff's counsel argued he "[didn't] think it [made] any bit of difference"

because "the forum is more convenient here." Counsel asserted defendant did

13

not dispute the "allegations that he stole from her, that he's beating her, all here in New Jersey."

The court rendered an oral decision, accompanied by an order granting defendant's motion to dismiss the complaint and a written statement of reasons. In its oral findings, the court explained it denied jurisdiction "based on [its] initial instinct" and the parties' arguments "on the grounds of com[it]y." The court found the Indian "matter was initiated in January 2020 when plaintiff was in India," and nothing demonstrated "it was dismissed in India for lack of jurisdiction."

The court further determined any deficiency in defendant's first-filed complaint "was cured before [plaintiff] filed her complaint" in the Family Part. The court noted:

> [Plaintiff's] counsel has an obligation with his client to make a sworn certification under [Rule] 4:5-1(b)(2) where it says, except as stated below, the matter is not subject to any action pending in any court. There's no case name, there's no docket number for the action pending in India, and I can't suggest that's an oversight, it sounds like . . . alleging that it was dismissed but failing to provide any evidence of same. In fact, . . . your own papers suggest it was pending.
>
> So, to me, . . . she knows an action was filed in India, she wants a divorce, they were married for a very short time, she can get the divorce in India, it sounds

> like it'll move faster in India because it's been moving along than it would here anyway.
>
> So, I'm not finding any prejudice by my declining jurisdiction. So, the time priority falls on India.

The court found defendant's lack-of-service claim moot, based on its dismissal on jurisdictional grounds. The court also denied "both parties' applications for legal fees . . . relying primarily on their disparity in income, and the fact that they've both been forced to waste a lot of energy and time in two different courts."

The court concluded by advising the parties to

> stick to a jurisdiction and finish the matter there, because that's where you'll get divorced faster.
>
> They have no children, [it] doesn't sound like there was any property that they've acquired that needs to be distributed by way of equitable distribution.
>
> I don't know how much she's claiming from him . . . but I presume it can be addressed properly in the Indian courts.

The court's written statement of reasons noted "the parties were married in India," and "only resided in the United States together as a married couple from March 2019 through October 2019." It further provided defendant "initiated divorce proceedings in India in January 2020 while both parties were in India," and plaintiff filed "for divorce in New Jersey on March 22, 2024."

15

The court stated "plaintiff allege[d] the case in India was dismissed" when she filed in New Jersey, "but fail[ed] to provide any evidence," and plaintiff's evidence instead proved "the Indian matter was still pending when she filed the New Jersey complaint." It further reasoned the Indian complaint was not dismissed because plaintiff "concede[d] an amended complaint was permitted and filed prior to her New Jersey filing" citing plaintiff's own exhibits. The court noted plaintiff's "power of attorney was present [in India] when the right to amend in India was permitted . . . and when the complaint was indeed amended."

In its written statement of reasons, the court further reflected "the filing of the [New Jersey] complaint . . . was done while plaintiff knew there was a pending action in India and was participating in" that action and, therefore, "her failure to disclose same was in violation of R[ule] 4:5-1(b)(2)." The court concluded "the parties' divorce is already being litigated by another court of competent jurisdiction," "the proceeding in India has time priority in becoming the legal and proper forum to proceed with the entire case," and "defendant in the New Jersey matter should be free from subsequent litigation over the same subject matter." Accordingly, the court found "to permit this action to continue in New Jersey would be a waste of judicial economy."

A-1319-24

II.

On appeal, plaintiff argues the court erred in dismissing the complaint on comity grounds without first considering whether Indian courts "could afford adequate and complete relief to [her]" and "whether there was sufficient equity in conscience to stay the hand of defendant."  For the first time on appeal plaintiff asserts specific comity arguments contending her interests and claims cannot be fairly addressed in India.  Plaintiff argues the court failed to address the required comity considerations including whether the Indian forum would permit consideration of "plaintiff's claims (e.g. grounds for divorce, alimony, or equitable distribution)."  Instead, plaintiff claims the trial court "mechanically applied comity without fulfilling its duty to ensure fairness."

Specifically, she submits India lacks jurisdiction over the parties' assets located in the United States and will be unable to afford her adequate and complete relief because "Indian courts lack jurisdiction to enforce division of United States based assets."  She contends "defendant's alimony obligation is enforceable only in New Jersey," and "Indian courts cannot award or enforce" her right to support under New Jersey law, "leaving [her] without recourse."

Plaintiff also contends the court "overlooked" equity considerations including her hardships, "such as travel burdens, cultural barriers, or

17

discriminatory foreign laws."  Plaintiff also debuts an argument that defendant entered a binding contract in connection with plaintiff's immigration application "to provide financial support" until plaintiff became a citizen—which is an agreement that can only be enforced in United States courts.  She argues New Jersey holds a compelling interest in "protect[ing] vulnerable spouses," and its laws track that goal by "preventing financial abandonment."  She contends the foreign jurisdiction will not permit adequate litigation of her "United States based rights" regarding spousal support and equitable distribution, and claims of abuse, theft, and abandonment.

Defendant counters, arguing plaintiff waived her newly-raised claims as she conceded before the trial court the Indian divorce litigation was filed years earlier and is ongoing, and she never before raised these special equities or addressed comity substantively before the trial court.  He further argues the trial court correctly determined jurisdiction remained in India, as the matter was long pending there, involved the same parties and issues, and the Indian court was adequately able to address the matter.  He also contends we should affirm the dismissal of plaintiff's complaint under the doctrine of unclean hands.

III.

"The scope of appellate review of a trial court's fact-finding function is

18

limited." In re D.L.B., 468 N.J. Super. 397, 416 (App. Div. 2021) (quoting Cesare v. Cesare, 154 N.J. 394, 411 (1998)). Ordinarily, on appeal we are "bound by [the] trial court's findings 'when supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare, 154 N.J. at 411-12). The "'court's interpretation of the law and the legal consequences that flow from established facts,' however, 'are not entitled to any special deference' and are subject to de novo review on appeal." Accounteks.Net, Inc. v. CKR L., LLP, 475 N.J. Super. 493, 503 (App. Div. 2023) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Thus, a "court's legal conclusions [are] always [reviewed] de novo." Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012) (citing Balsamides v. Protameen Chems., 160 N.J. 352, 372 (1999)). Generally, "on appeal, courts review . . . jurisdictional rulings de novo," State v. Coviello, 252 N.J. 539, 552 (2023) (citing Bandler v. Landry's Inc., 464 N.J. Super. 311, 318 (App. Div. 2020)), which may involve "mixed question[s] of law and fact" as to the underlying facts that give rise to jurisdiction, D.T. v. Archdiocese of Phila., 260 N.J. 27, 41 (2025).

New Jersey recognizes "the general rule that the court which first acquires jurisdiction has precedence in the absence of special equities." Sensient Colors, Inc. v. Allstate Ins. Co., 193 N.J. 373, 386 (2008) (quoting Yancoskie v. Del.

River Port Auth., 78 N.J. 321, 324 (1978)); see also Sajjad v. Cheema, 428 N.J. Super. 160, 180 (App. Div. 2012). "Under the first-filed rule, a New Jersey state court ordinarily will stay or dismiss a civil action in deference to an already pending, substantially similar lawsuit in another state, unless compelling reasons dictate that it retain jurisdiction." Ibid. (citing O'Loughlin v. O'Loughlin, 6 N.J. 170, 179 (1951)). The doctrine of judicial comity is equally applicable to judicial proceedings in foreign countries, Exxon Rsch. & Eng'g Co. v. Indus. Risk Insurers, 341 N.J. Super. 489, 503 (App. Div. 2001), and New Jersey has applied comity principles to determine whether courts in New Jersey should defer to actions involving divorce or child custody filed in foreign courts. See, e.g., Fantony v. Fantony, 21 N.J. 525, 532-33 (1956); Sajjad, 428 N.J. Super. at 179-82; Innes v. Carrascosa, 391 N.J. Super. 453, 490-93 (App. Div. 2007).

The first-filed rule is not an absolute. Sensient Colors, 193 N.J. at 386-87. Importantly, the second court must consider whether "the foreign court had jurisdiction of the subject matter" and whether "the foreign judgment will not offend the public policy of [New Jersey]." Fantony, 21 N.J. at 533.

To stay or dismiss a New Jersey action on the basis of comity, the moving party must show that (1) there is an earlier-filed action in another jurisdiction;

20

(2) the prior action involves "substantially the same parties, the same claims, and the same legal issues" as the second-filed action; and (3) the plaintiff in the second-filed action "will have the opportunity for adequate relief" in the first action.  Sensient Colors, 193 N.J. at 390 (citing Am. Home Prods. Corp. v. Adriatic Ins. Co., 286 N.J. Super. 24, 37 (App. Div. 1995)).

Once the party seeking relief "satisfies those prerequisites, then the burden shifts to the other party, [who] must demonstrate special equities" that weigh in favor of retention of jurisdiction by the second court.  Id. at 390-91.  Special equities can exist under a variety of circumstances, including (1) "when one party has engaged in [forum] shopping to deny the other party the benefit of its natural forum"; (2) when a party has, in bad-faith, first-filed in anticipation of an immediate suit in another forum; (3) when the second action implicates "significant state interests" so that deference to another forum "would contravene the public or judicial policy"; and (4) when proceeding with the first-filed action "would cause great hardship and inconvenience to one party," and no unfairness would result to the opposing party.  Id. at 387-89 (internal quotation marks omitted).

However, a "defendant seeking a comity stay or dismissal in the second-filed action should not have to argue that the other party will receive a fair day

A-1319-24

in the courts of another jurisdiction" as "the plaintiff in the second-filed action contending that it cannot receive a fair hearing on the merits of its claims in the courts of the first-filed jurisdiction is in the best position to advance that argument." Id. at 392. We have noted "special equities" generally include "considerations such as convenience and fairness to the parties, as well as connections with the respective forums," in addition to any "specific facts" that would make a dismissal "unjust to the interests of the parties or an unfair and inefficient use of the courts of this State." Am. Home Prods., 286 N.J. Super. at 39. Thus, a "dismissal of the second-filed action should be denied if an 'injustice would be perpetrated' on a party in the first-filed action and 'no hardship, prejudice or inconvenience' would be inflicted on the other by proceeding in the second-filed case." Sensient Colors, 193 N.J. at 389 (quoting Gosschalk v. Gosschalk, 48 N.J. Super. 566, 579 (App. Div. 1958)).

Against this legal backdrop, and after considering the trial court's decision in light of the record before it, we are not satisfied the court sufficiently assessed the relevant comity considerations. Although we recognize plaintiff failed to raise before the trial court the now-refined and nuanced special equities arguments she advances here, we cannot overlook defendant's failure to present,

and consequently the trial court's failure to identify, the precise claims pending in the divorce action in India under his amended complaint.

We are thus blind to the precise nature of the divorce action and issues under consideration in that matter. Defendant did not provide the Indian complaint to the trial court for a facial comparison. We can only discern from the record that the action pending in India until early 2024 solely sought divorce under the "Muslim Marriage Act," which the parties both concede defendant lacked standing to invoke. They also seem to concur the amended complaint relies upon a particular section of India's "Special Marriage Act," but offer no further detail regarding the scope and reach of that law. Without some idea of the substance of those claims or the applicable law, we are not convinced the trial court properly determined defendant made a sufficient showing the pending Indian litigation concerns "the same claims, and the same legal issues" or that plaintiff "will have the opportunity for adequate relief" in that first-filed action. See Sensient Colors, 193 N.J. at 390.

We emphasize we make no judgment regarding the appropriate result on remand. We also recognize plaintiff, despite alleging factual special equities considerations in her certification and generally at oral argument, failed to make detailed comity arguments with any degree of specificity to the trial court. But

23

critically, neither did defendant, upon whom the initial burden rests. Indeed, defendant argued collateral estoppel, and thus never framed arguments in terms of comity, other than to singularly focus on his establishing his first-filer status. Without more information pertaining to the pending claims, applicable law, and available relief in the Indian action, we cannot conclude dismissal of plaintiff's complaint was appropriate. Accordingly, we vacate the dismissal and remand for further proceedings in accordance with this opinion.

We further reject defendant's alternative argument asserting plaintiff's "unclean hands" warrant dismissal as lacking sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division